ROBERT KEETON ET AL. vs. WILLIAM SPRADLING ET AL.

1. Where a court of chancery obtains jurisdiction of a cause for any purpose, it may proceed with the whole case and decide it upon its merits.

[13 321]
[120 216]

2. If a person whose name is not inserted in the body of an instrument of writing, signs and seals it at the foot thereof, it is a sufficient execution to make it his bond in a court of equity.

APPEAL FROM ST. FRANCOIS CIRCUIT COURT.

FRISSELL for appellant.

The failure to insert the names of the securities in the body of the bond, does not vitiate the bond. Exparte Fulton, 7 Cowen Rep. 485; Smith vs. Crooker et al. 5 Mass. 538; Dobson vs. Keys; Croke James, 261; Penn vs. B., 6th Mart. Lo. Rep. 497; Blakey vs. Blakey, 2 Dana 460; Bartley & Ferguson vs. Yales, 2 H. and M. Rep. 398; Adams vs. Wilson, 10 Mo. Rep. 341; Tevis vs. Hughes, 10 Mo. Rep. 380; 1 Tuck. Com. 275; Crawford vs. Janett's adm'r. 2 Leigh. 630.

It is insisted that the complainants had no remedy at law, for the reason of the false and fraudulent final settlement of Wm. Keeton in the Jefferson county court. This settlement must be set aside before a remedy at law would be available.

See Keeton's distributees vs. Cambell et al., Humphrey's reports, 224 Tennessee.

COLE for appellees.

1st. That as to the demurrant there is no equity in the bill of complaint. The bill is to enforce a penalty in a bond against appellee. This belongs to a court of law, Comm. on Equity pleading by Story, page 398, sec. 521; Mo. law, 836, sec. 1.

2. That if the complainants are entitled to any remedy, it is at law: 1 Chitty pleadings, 39-2; Chitty 209, 16, 520. They have an adequate remedy there.

3. That the instrument, called by complainants a bond, is in fact not the bond of John Smith T., nor was the same in any wise obligatory upon him during his lifetime, nor upon his heirs since. Adams et al. vs. Wilson. 10 Mo. Rep. 342; Tevis et al. vs. Hughes, 10 Mo. Rep. 381.

4. That the bill of complaint contains distinct matters and separate demands that cannot be joined together. The bill is multifarious. Story's pleadings in equity, page 153. Note 1 and 2, Maddock 193; Jones vs. Paul, 9 Mo. Rep. 296; Blackwell vs. Wilkson, 4 Mo. Rep. 428.

NAPTON, J., delivered the opinion of the court.

This is a bill in chancery, filed in the circuit court of St. Francois county, by the heirs of John Keeton against William Spradling administrator of William Keeton, who was in his life time the administrator of John Keeton, and against the heirs of John Smith T., and Elisha Ellis who were securities in the administration bond of said William Keeton.

The facts upon which relief is sought are stated in the bill as follows: John Keeton came to Jefferson county, in Missouri, some time in 1825, leaving his family and the bulk of his estate in Tennessee, but bringing with him about twenty slaves. He died early in the fall of 1826, and on the 8th September of that year, letters of administration upon his estate were granted by the probate court of Jefferson county to Michael Taney. On the 15th March 1827 these letters were revoked and letters of administration were granted to William Keeton, who came to this State for this purpose and who had previously taken out letters of administration upon John Keeton's estate in Tennessee. John Smith T. and Elisha Ellis became securities upon William Keeton's bond. William Keeton hired out the slaves, but kept the proceeds and shortly removed the slaves to Tennessee. He then made a pretended or fraudulent sale of them, without any order of a court of competent jurisdiction, and became himself the purchaser of a portion of them and others were bought in by the heirs. He returned to this State with such of the slaves as he had thus fraudulently thus purchased, died here, and the slaves are now in the possession of his administrator William Spradling.

William Keeton had made a final settlement with the probate court of Jefferson county on the 11th September 1830, which is alleged to be fraudulent.

It is further stated in the bill, that William Keeton as administrator of John Keeton in Tennessee, received large sums of money, unaccounted for, amounting to about $1500 to each heir. That suit was instituted in Tennessee upon the bond given there, against the securities in that bond, that a decree was rendered and an account ordered, but that this decree was reversed by the supreme court of that State, or at least, so much of it as held the securities upon the Tennessee bond liable for the slaves received in Missouri. It is also stated that P. Pipkin, administrator de bonis non of John Keeton has brought suit against Spradling for these slaves.

The prayer of the bill is that Spradling, who is the administrator of William Keeton deceased, may be held accountable for the hire of the slaves under his control as such administrator, and originally belonging to the estate of John Keeton and as far as he has received assets, may be also responsible for the annual value of these slaves from the time they came into the hands of W. Keeton as administrator of John Keeton, that in the event of a deficiency of assets, the heirs of John Smith T. and Elisha Ellis be held accountable for this deficiency, their ances-

tors having been securities upon W. Keeton's bond as administrator. The bill charges that all of John Keeton's debts have been paid.

To this bill a demurrer was filed, and sustained by the circuit court.

This bill though containing a great deal of irrelevant matter, seems designed as an auxiliary proceeding to a suit at law instituted by Pipkin, the administrator de bonis non of John Keeton, for the possession of certain slaves alleged to have been fraudulently procured by William Keeton. The prayer of the bill is confined entirely to an account of the annual value or hire of these slaves, from the time they fell into the possession of W. Keeton as administrator of John Keeton, up to the institution of the suit at law by Pipkin. As William Keeton had made a final settlement of his administration in the probate court of Jefferson about eighteen years before the institution of these proceedings, it was necessary to set aside this settlement, as an insuperable bar to the claims here advanced on the part of his heirs. This settlement is therefore attacked as fraudulent. The statements of the bill in relation to William Keeton's mal-administration in Tennessee and his failure to pay over to the heirs the several sums to which they were entitled upon a fair settlement of the Tennessee estate, appears to be entirely foreign to the general object sought. If it were not so, and this portion of the bill is to be regarded as laying a substantial foundation for any claim against Spradling, it is manifest that such a controversy is one, in which the heirs of John Smith T. and Elisha Ellis have no concern. The objection of multifariousness in this view of the bill would be a sound one. But I take these recitals in relation to the Tennessee suit as merely superfluous, and as they are followed by no prayer for relief upon this head, they would seem designed to be merely illustrative of the general history of the case.

The reference which is made in the bill to the suit at law against Spradling, which was instituted to get possession of such of the slaves as still remain a part of William Keeton's estate, would rather show that two suits have been instituted where one only could be necessary. For if the fraudulent settlement of 1830 is to be the basis of jurisdiction to the court of chancery and enable it, in accordance with its established usages, to proceed with the whole case and decide the merits, such a principle of action would as well authorise a decree for the restoration of the slaves themselves, as for their hire or annual profits. However this may be, it will constitute no serious objection to the present bill.

It is manifest that the responsibility of the heirs of John Smith T., and Elisha Ellis, depends upon a question which is somewhat adverted to in

the case of Pipkin vs. Casey, decided at the present term. If the slaves of John Keeton's estate were delivered over to William Keeton as the administrator in Tennessee and were there inventoried as a part of the estate, and in the counsel of this Tennessee administration, these slaves were fraudulently or illegally disposed of. The securities upon W. Keeton's bond in Missouri are unquestionably not liable. This question however does not arise upon this demurrer. The settlement here is alleged to be fraudulent, the removal of the slaves to Tennessee declared to be without authority, and the disposal of them then without the sanction of any court having jurisdiction. We have adverted to this point only because we cannot avoid seeing, with the record of the suit of Pipkin vs. Casey before us, that the result of the present suit in equity must depend, so far as a portion of the defendants are concerned upon the facts and principles to be settled in several other collateral suits growing out of this same transaction.

It has been suggested as a ground for sustaining this demurrer, that the names of John Smith T., and Elisha Ellis, do not appear in the body of the instrument, although signed and sealed at the foot. The objection is based upon a former decision of this court. Upon a careful examination of all the cases, we think the objection is not a good one, at least in a chancery proceeding. The authorities for holding such a bond void against the signer whose name is not inserted in the body of the instrument, in a suit at law, are not satisfactory and the cases in our court concede the right to set up a bond thus executed in equity. Ex-part Fulton 7 Cow 485. Dobson vs. Keys Cro. Jac. 261. Smith vs. Crooked, 5 Mass. R. 538. Blakey vs. Blakey 2 Dana 463, 2 Litt. R. 287. Bartley and Ferguson vs. Yates 2 H. and Memp. 398. Crawford and others vs. Janell's adm'r. 2 Leigh 630.

The other judges concurring, the decree is reversed and the cause remanded.