MICHAEL B. O'REILLY *et al.,* Appellants, *v.* ISAAC NICHOLSON and ISAAC WHITE, Respondents.

1. *Equity—Relief—Jurisdiction—Judgments, when not impeachable collaterally.*— The informality of a judgment, even to the extent of granting a relief not contemplated by the petition, when parties are before the court and the relief is within its jurisdiction, is not a void proceeding, and can not be impeached collaterally.

2. *Equity — Devises of lands ; of money in lieu of — Election — Conveyance of land pending election — What title conveyed.*— When the testator devises the interest of certain heirs in a specified tract of land to other members of his family, and also devises to said heirs certain moneys as their full share and just proportion of the land, the equity doctrine of election applies; the appearance of the heirs in court and their renunciation of the land is also an election; and the attempted conveyance by them and its acceptance by

O'Reilly et al. v. Nicholson et al.

the purchaser during suit in partition of the land, and while the election is being made, especially when the purchaser acted as a sort of attorney for them, and drew and swore them to their answer in that suit, is a gross and naked fraud attempted to be perpetrated upon the other heirs of the testator, a contempt of the court in which the proceedings are pending, and possesses no validity whatever.

3. *Lis pendens—Deed void.*—The deed of a party *pendente lite* is void, and even an innocent purchaser would take nothing by his deed, and could convey nothing; and a purchaser *pendente lite* is bound by the decree that may be made against the person from whom he derives title.

*Appeal from St. Louis Circuit Court.*

*Hitchcock & Lubke,* for appellants.

I. The recitals in the decree, being upon a matter collateral and incidental to the issues, are not conclusive. (15 N. H. 17; Minor v. Walter, 17 Mass. 237; 2 Am. Lead. Cas. 792–813.)

II. A decree is not constructive notice to any persons who are not parties to it. (1 Sto. Eq., §§ 405–407.)

III. The decree itself, so far as it undertook to convey the two-ninths interest of Mrs. Lount and Julia White to the other parties to that suit, was void for want of jurisdiction. (2 Smith's Lead. Cas. 676–7; King v. Chase, 15 N. H. 9.)

IV. This is not a case of election. (2 Story's Eq. § 1086.)

*Garesche & Mead,* and *Mortell,* for respondents.

I. A purchaser *pendente lite* was bound by the decree. (2 Sugd. on Vendors, 104, § 19; 1 Story's Eq. 393, § 406; Kern v. Hazelrigg, 11 Ind. 446; Harrington v. Slade, 22 Barb. 166.)

II. The land court had jurisdiction over both of the parties and of the subject-matter. (2 R. C. 1855, p. 1592, § 2; Buchanan v. Dersaimet, 21 Mo. 585; Wohlien v. Speck, 22 Mo. 310; Segond v. Garland, 23 Mo. 547; City, to use of Lohrum, v. Coons, 37 Mo. 44; Patrick v. Abeles, 27 Mo. 184; Mulloy v. Lawrence, 31 Mo. 583.)

BLISS, Judge, delivered the opinion of the court.

The plaintiffs bring ejectment against defendants, claiming two-ninths in a twenty-acre tract of land in St. Louis county, as heirs of John O'Reilly, deceased.

The record shows that Isaac White, father of defendant, died in 1841, and was the owner of the land. He left it by will to Sophia, his wife, for life, remainder to his children in fee, who, during her life, all released to her except Virginia, who became the wife of Samuel S. Lount, and Julia S. In 1858, Sophia White, the widow, died, having made a will by which she gave $800 each to said Virginia and Julia, to be paid at once, and $1,000 each, in addition, to be paid on the settlement of her estate; and she directed the sale of her property, and division of its proceeds among six of the other children, naming them. Virginia and Julia each received their $800, according to the will, and soon after their mother's decease, in June, 1862, W. L. Thirwell, executor of the will, presents to the St. Louis Land Court his petition setting forth the will, the partial settlement of the estate, describing all the real estate, including the twenty acres, as belonging to said Sophia at her death, averring that said Virginia (then married to Samuel S. Lount) and Julia are entitled to $1,000 each, not yet paid them, and that the balance of the estate belongs to six of the other seven children, naming them, and asks judgment that the property belonging to the estate be sold for the purpose of carrying out the will, and also asks for partition. Samuel S. Lount, Virginia Lount, and Julia White answer and deny that said Sophia owned said real estate, but aver that two-ninths of it belonged to said Virginia and Julia, as heirs of their father, the said Isaac White. The record shows none of the proceedings in the case until the decree which was rendered in May, 1863, only as the decree, which is long, refers to evidence submitted. The decree, after describing all the real estate in full, finds, among other things, that the said Julia and Virginia and said Sophia believed that she, said Sophia, the mother, owned in fee the entire estate, with full power to dispose of it, and that she intended to give said Virginia and Julia the said $1,800 each, "as their full share and just proportion of the real estate," as well as personalty. It also recites that the personal estate is insufficient to pay the $1,000 each due said Julia and Virginia; and, after further reciting that they appear in open court and relinquish all title and claim to the real estate,

orders that all the interest had by them at the commencement of the suit or now, be divested out of them and invested in the other heirs, subject to the payment of said $1,000 each; and that the executor proceed to sell sufficient of said real estate to pay the $2,000, etc., and make report of his proceedings, etc. At the same term, and two days after the decree, and while the matter was pending, the said Virginia and Julia "filed in said suit" their release of their interest in the estate, except so far as it is chargeable with the payment of their legacies. The decree was entered under date of May 21, and the release filed May 23 ; and the record shows further that on the 22d of May, Samuel S. Lount and his wife, the said Virginia, and said Julia, for the consideration of ninety-nine dollars, executed to one Bernard a deed of their interest of two-ninths of said twenty acres of land. The deed was acknowledged by John S. Bowman and filed for record, according to the recorder's certificate, at half-past 9 o'clock, May 23. Bowman testifies that he, and not Bernard, was the real purchaser, and that the consideration was a credit upon Lount's account for the ninety-nine dollars; and afterwards Bernard deeded to him, and he sold to John O'Reilly for $600. The plaintiffs, as his heirs, bring this suit. The judgment below was for the defendants.

The case seems to have turned upon the validity and legal effect of the decree, and upon the notice to the plaintiffs of its existence. First, plaintiffs' counsel contend that the decree itself was a nullity, and that it can hence be impeached collaterally. But the decree is not a nullity. It is true the petition hardly lays the foundation for the relief given; but the court had jurisdiction both of the subject-matter of the petition and the subject-matter of the decree. The object of the petition was for authority to raise money out of the land to pay the legacies, and the court added to the order sought, substantially, an election by the legatee to take the legacy and release the land, with an order carrying out that election. The court had a right to do both; and, if the petition did not lay a foundation for both, the decree is simply erroneous, but can not be impeached collaterally. A judgment, though informal, even to the extent of granting a

relief not contemplated in the petition, when parties are before the court and the relief is within its jurisdiction, is not a void proceeding.

Let it be considered, as the plaintiffs' counsel claims, that the paper filed had not the requisites of a conveyance, still it was evidence of an election, and their appearance in court and the declaration there as recited in the decree was also an election, and the doctrine of election applies to just such a case as this. The record does not show what evidence was before the court, but there was enough to satisfy it that the testatrix had devised the interest of Virginia and Julia in certain lands to other members of the family, and had also devised to these, then unmarried, daughters $1,800 each in cash as their full share and just proportion of the lands. The testatrix, as the court found, did not intend these daughters to have the money and land too, but the money in lieu of land, and, it being inequitable for them to take both, they came into court, renounced the land, and filed an instrument in writing to the same effect.

The doctrine of election ordinarily applies to inconsistent or alternative donation, but it has also other applications. Swanson, in his note to Dillon v. Parker, 1 Swans. 394, so strongly commended by Story, says : " The owner of an estate having, in an instrument of donation, applied to the property of another expressions which, were that property his own, would amount to an effectual disposition of it to a third person, and having by the same instrument disposed of a portion of his estate in favor of the proprietor, whose rights he assumed, is understood to impose on that proprietor the obligation of either relinquishing (to the extent of at least indemnifying those whom, by defeating the intended disposition, he disappoints) the benefit conferred on him by the instrument, if he asserts his own inconsistent proprietary rights, or, if he accepts that benefit, of completing the intended disposition by the conveyance in conformity to it of that portion of his property which it purports to affect."

In Pemberton v. Pemberton, 29 Mo. 409, this court held that where a husband bequeathed to his widow a share belonging to his children, and made their children his residuary legatees, they

must relinquish the share or renounce the legacies. It was held to be a case for election.

In the record under consideration, evidence *dehors* the will was doubtless received, but even if this were erroneous—upon which there are contradictory decisions—it would not make the election void. For purposes of this action, the proceeding and decree under them are to be treated as wholly free from error.

The character, then, of the attempted conveyance of Virginia Lount and her husband and Julia White, and its acceptance by Bowman while the election was being made, especially in connection with the fact that Bowman acted as a sort of attorney for them, drew and swore them to their answer, is very transparent. It was a gross and naked fraud attempted to be perpetrated upon the other heirs of Mrs. White, a contempt of the court in which the proceedings were pending, and possesses no validity whatever. Mrs. Lount attempts to excuse herself by saying that she was ignorant of the character of the paper, and signed it by direction of her husband, since dead. This, if true, may extenuate her criminality, but in no way affects the nature of the transaction.

The defendants insist, however, that John O'Reilly, from whom they claim, was an innocent purchaser, inasmuch as he had no notice of the decree, which was never recorded. There was a failure to put this decree upon the proper record, and that failure and its supposed effect was doubtless the cause of the purchase by John O'Reilly. He employed his brother, one of the plaintiffs, to examine the records, who did not find it, and when asked why he did not look into the records of the Land Court, replied that it was not his business, intimating properly enough, in a proper case, that those records were not the place to look for record evidence of title. But what was the relation of John O'Reilly to this proceeding? We have seen that Bowman was fully cognizant of the suit in the Land Court, and was a party to the fraud. O'Reilly was his clerk, and hence in confidential relations with him. No one would believe from that fact alone and from the further fact that the consideration was a nominal one compared with the value of the property, that he did not

have knowledge sufficient to put him upon his guard. But further, it is in evidence that he knew of this suit—talked about it, and the chances of the purchase becoming a good speculation, and that Bowman, before his death, gave him a bond to return him $300, half the consideration, if the speculation should fail. This bond, in connection with the fact that Bowman by his warrantee deed was already obligated to him for the whole, if the title failed, strongly indicates a partnership interest in the transaction.

Upon trial below, under instructions of the court in regard to notice, the jury returned a verdict for defendants, and judgment was rendered upon it. Had those instructions been erroneous, the judgment, being so clearly for the right party, should not be disturbed. But the error in the instructions was really against instead of in favor of the defendants. The court went altogether too far in sustaining the plaintiff's claim. The instruction holds that the deeds of Virginia Lount and Julia White to Bowman, and of Bowman to John O'Reilly made the plaintiff's title good, "unless John O'Reilly, before the deed to him from Bowman was made and delivered to said O'Reilly had actual notice of the decree which has been read in evidence made in the suit of Thirwell, executor, &c., against Isaac White, or of the existence of said suit."

The error of this instruction consists in the assumption that the deed of Virginia Lount and Julia White, pending the suit to which they were parties, had any validity whatever as against the other parties. It was a deed of a party *pendente lite*, and void. If Bowman had been an innocent purchaser, even he would have taken nothing by his deed, and could convey nothing. A contrary rule would make litigation endless. As well might the plaintiffs to this suit convey during its progress the premises in dispute to a third person, and compel the opposite party to litigate the matter over again. The authorities are clear and conclusive upon this point. The Master of the Rolls, in Winchester v. Paine, 11 Ves. 194, on page 197, says: "Ordinarily, it is true, the decree of the court binds only the parties to the suit. But he who purchases during the pendency of the suit is bound by the decree

that may be made against the person from whom he derives title. The litigating parties are exempted from the necessity of ·taking any notice of a title so acquired. As to them, it is as if no such title existed. Otherwise, suits would be indeterminable," etc. See also Murray v. Ballou, 1 Johns. Ch. 566. The rule is older in law than in equity, and was adopted by Lord Bacon from the common-law courts, and in the case at bar it effectually prevents the plaintiffs from claiming title through this deed of Virginia and Julia White against any of the parties to the former proceeding. It becomes quite unnecessary to consider the technical accuracy of the instruction in regard to notice, as the plaintiff's title is wholly worthless.

Judgment affirmed. Judge Currier concurs. Judge Wagner absent.