CHARLES H. PRIMM, *et al.*, Appellants, *vs.* JUNIUS B. RABO-
TEAU, *et al.*, Respondents.

| 56 | 407 |
| 100 | 58 |
| 100 | 150 |
| 36a | 63 |
| 56 | 407 |
| 108 | 216 |
| 56 | 407 |
| 119 | 565 |
| 120 | 216 |
| 56 | 407 |
| 163 | 651 |
| 56 | 407 |
| 170 | 281 |

1. *Practice, civil—trials—Testimony—Objections to—Grounds must be specifically stated, in legal or equitable actions.*—The rule requiring the grounds of objections to testimony to be specifically stated, applies alike to legal and equitable actions ; and objections, the grounds of which are not specifically stated, are properly disregarded by the court.

2. *Land and land titles—Equity—Bill of Peace.*—Where the correctness of a particular boundary line between two tracts of land has been thoroughly and satisfactorily tried in a number of actions, extending through a considerable time, and the verdict and judgment have always been in favor of the correctness of such boundary ; equitable relief will be properly granted at the instance of the persons maintaining the correctness of said boundary, by enjoining its assailants from further vexing and harrassing those asserting it by a suit at law; and this, even if the said actions so tried did not involve the same pieces of ground ; provided they involve the same boundary and were between the same parties or their privies in estate.

3. *Res adjudicata—Practice, civil—Tenants in common—Privity.*—Under the above detailed circumstances, the personal participation of a party in the previous litigation is wholly immaterial, provided his title hangs by the same thread, and depends on the same facts, as that of his co-claimants.

4. *Land and land titles—Boundaries—Words of description.*—The words "the middle of the natural channel of the creek, when the pond is exhausted," mean the position of the thread of the creek when the pond was actually exhausted. (Primm vs. Walker, 38 Mo., 91 ; Mincke vs. Skinner, 44 Mo., 92, affirmed.)

5. *Land and land titles—Boundaries—Equity.*— *Semble,* That equity will interfere to ascertain and fix boundaries where the rights of a large number of persons are affected and a confusion of boundaries has been occasioned by a lapse of time, accident or mistake, and a necessity therefore arises to adjust such conflicting claims and thus prevent interminable litigation.

6. *Equity—Bill of peace—Boundary.*—Where a court of equity grants relief in response to the prayer of a pleading in the nature of a bill of peace it may effectuate its decree in their behalf, by requiring a disputed boundary to be surveyed and marked in a permanent manner.

*Appeal from St. Louis Circuit Court.*

*J. W. Skinner and W. C. Jones,* for Appellants.

I. The court has no power, by decree, to establish a boundary line. The statute provides a way for restoring lost boundaries, and a court cannot make new laws to supersede the statute. If the bed of the creek exists where defendant says it does, it is a fact needing no assistance from a court of equity. If it does not, and did not exist there naturally in

1851, the court cannot put it there by a decree. The court has no legislative power to create it. The existence of it was a fact to be found and best ascertained by a trial. If that had been tried by the new evidence, and between the new parties, and plaintiffs had failed, the way would have been open to enforce the injunction.

II. There was no privity of estate between John P. Reily or Octavia Warren and any of the parties to the records offered in evidence. Privity of estate, says Bouvier, exists when a relation is established like that of landlord and tenant, or grantor and grantee. "The term privity," says Greenleaf, (1 Ev., p. 216, § 199) "denotes mutual or successive relationship to the same rights of property, and privies are distributed into several classes according to the manner of this relationship. Thus, then, are privies of estate, as donor and donee, lessor and lessee, and joint tenants, etc." But the relations of donor and donee, or grantor and grantee, do not exist between John P. Reily or Octavia Warren and any of the other parties to this action. Their titles are independent of each other. (4 Kent, p. 368.)

J. P. Reily and Octavia Warren and the parties plaintiff in the preceding suits were not joint tenants of the land in question, for joint tenants are closer allied than tenants in common. To constitute the estate of joint tenancy there must be unity of interest, title, time and possession, that is, that each and all of the said joint tenants must have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession. Joint tenants are persons who own "land by a joint title, created expressly by one and the same deed or will," and hold uniformly by purchase. (2 Blackst. Com., 180; 4 Kent, 357.)

The relation of joint tenants never existed between John P. Reily and Octavia Warren, and the other appellants herein. Their titles are diverse in time, duration, etc. No dower is allowed in joint tenancy. The court therefore erred in permitting even these records to be read against them,

there being no privity in estate between said parties and said Reily and Warren; and they are, therefore, not bound by the prior judgments. (1 Stark. Ev., 59, *et seq.;* 1 Greenl. Ev., § 174, *et seq.;* Br. Leg. Max., "*Res inter alios acta.*")

Between tenants in common there is no privity in estate. (4 Kent, pp. 359, 367.)

There has been no judgment against Octavia Warren and John P. Reily—not one judgment against their privies in estate, and one judgment in their favor.

*T. T. Gantt, with whom was John F. Lee,* for Respondents.

I. It is well settled, that whenever any fact has once been judicially determined between A and B, it is at rest for ever. Neither party can afterwards reagitate it. (Miles vs. Caldwell, 2 Wall., 35; Outram vs. Morewood, 3 East., 345; Gardner vs. Buckbee, 3 Cow., 120; Doty vs. Brown, 4 Comstock, 71; Kitchen vs. Campbell, 3 Wilson, 304; Betts vs. Starr, 5 Conn., 550; Kent vs. Kent, 2 Mass., 338; Burt vs. Steinburgh, 4 Cowen, 55; Beebe vs. Elliott, 4 Barb. 457; Shode vs. Seaton, 2 Crompton, M. & R., 728; 1 Cow., 120; 3 Wils., 304.)

These authorities show not only that a judgment between A and B was conclusive as to the matter of the judgment itself, but that if any particular facts which contributed to the judgment, were put in issue between the litigants though not mentioned (or even mentionable) in the judgment, its determination was conclusive.

SHERWOOD, Judge, delivered the opinion of the court.

This was an action of ejectment. The answer of the defendants was in the nature of a bill of peace. The claim of the plaintiffs is based on a deed for lot No. 3 made to Thos. Ingram on the 6th day of September, 1832, by the commissioners of partition sale of Auguste Chouteau's estate; and the defendant's claim under a deed made by such commissioners on the same day to Jonas Newman, conveying to him lot No. 20. Ingram and Newman thus becoming the purchasers

respectively, of those lots, which were situated on opposite sides of what was called "Chouteau's Pond." In each case, the boundary on the water side was "the middle of the natural channel of the creek when the pond is exhausted." As the above mentioned deeds show, the lots therein described were sold subject to the right and privilege of the purchasers of lot No. 9, their heirs and assigns, to keep up the mill-dam of the pond to its then existing height, and the pond full of water to its utmost height, for the use of the mill then erected, and for all other purposes to which the water might be lawfully applied, forever.

The court, at the instance of the defendants, and against the objections of the plaintiffs, heard and determined the allegations of the answer and the issues raised thereby, and entered a decree in behalf of the defendants as follows:

"This cause having been heretofore, to-wit: at the October Term of 1871, of this court, fully heard on the pleadings, exhibits and proof, and the same being by the court here maturely considered and fully understood, for that it appears to the court here that the controversy between the said plaintiffs and the said George Mincke, his tenants and vendees in the present suit respects the location of the channel of the creek of Chouteau's Pond in its natural bed when the pond was exhausted, and that said channel constitutes the boundary between lot No. 3 sold by the commissioners appointed to make partition of the estate of A. Chouteau to Thomas Ingram by deed dated Sept. 6, 1832 and lot No. twenty (20) sold by the same commissioners to Jonas Newman, by deed of same date, the plaintiffs in this action being the legal representatives of the said Thomas Ingram, and the defendants being the legal representatives of the said Jonas Newman; that the said controversy has been pending at various times in courts of competent jurisdiction, between the said plaintiffs and the said defendants, or their privies in estate since the year 1856; that in the interval between the year 1856, and the commencement of this action, the said controversy has been submitted to six different juries, in actions wherein the said plaintiffs or their privies in estate were par-

ties, and opposed to the said defendants or their privies in estate; that on two occasions the said plaintiffs voluntarily became non-suit, after all the testimony had been submitted, and that on four other occasions there were verdicts all concurrent against the said plaintiffs or their privies in estate, and in favor of said defendants; that on each occasion the correctness of the location of the channel of the said creek of Chouteau's Pond as the same was found by Cozzens, Hyer and Shultze on actual survey in 1851, when the pond was exhausted, was drawn in question; the said plaintiffs or their privies in estate denying the correctness of said location and the said Mincke and others, defendants, asserting the correctness thereof; that on each of said four occasions the matter of fact of the correctness of said locations was found by the jury in favor of said defendants and their privies in estate, the last of which verdicts was rendered in June, 1869; and that the said plaintiffs seek by this action to re-agitate the question of the correctness of said location. It is, thereupon, ordered adjudged and decreed, that the following described line be established and declared, as the ascertained, proved and determined boundary between the said lot three (3), sold and conveyed as aforesaid to Thomas Ingram, and lot twenty (20) sold and conveyed as aforesaid to Jonas Newman by the commissioners appointed to make partition of the estate of A. Chouteau in 1832, that is to say: a line beginning at a point in the south line of Clark Avenue at a distance eastwardly from the eastern line of Tayon Avenue, of one hundred and four feet six inches, (104.6,) thence running southwardly two hundred and fourteen feet and three inches (214.3), to a point on a line parallel with Clark Avenue, and two hundred and twelve feet six inches (212.6), south thereof at a distance from Tayon Avenue, eastwardly, of one hundred and fifteen feet (115), thence southeastwardly to a point in the north line of Spruce street one hundred and sixty-seven feet, eleven inches (167.11), and thence continuing the same course to a point in the north of Poplar street, three hundred feet east of Tayon Avenue. And that said boundary line so deter-

mined be surveyed and marked in a permanent manner by William H. Cozzens, surveyor, and that he make a return to this court of such survey with a plat thereof, with all convenient speed, and that the said plaintiffs and their privies, in estate and each of them be perpetually enjoined, restrained and prohibited from further vexing, harassing or disturbing by suit or action at law or in equity, the said George Mincke or any one claiming under him, as to their possession of the land bounded on the north by Clark Avenue, west by Tayon Avenue, south by Poplar street, and east by the said boundary line so ascertained and determined and surveyed," etc., etc.

The evidence offered on the part of the defendants in support of the allegations of their answer, consisted chiefly of the records and bills of exceptions of the former trials referred to in the decree, and the plats, deeds, depositions, testimony, etc. etc., preserved in such bills and used at such former trials. The plaintiffs objected to the introduction of this evidence, but, no grounds being stated for such objections, they were by the court properly disregarded. The rule as to the necessity of making specific objections to the introduction of testimony is precisely the same whether the proceeding had looked to the enforcement of legal or of equitable rights. (Margrave vs. Ausmuss, 51 Mo., 561, and cases cited.)

But even had there been no lack in the plaintiff's objections in this particular, they were still properly overruled, as the evidence sought to be excluded was perfectly competent and sustained in their fullest extent the allegations of the answer, and the finding of the court as set forth in the decree. Up to the time of the trial of this cause, litigation in the form of suits in ejectment, in which the controversy hinged upon what was the correct boundary between lot 3 and lot 20, had been in progress in the court below between most of the present plaintiffs, and all of the present defendants, or those under whom they claim, with the same unvarying result; that is, a verdict and judgment in favor of the defendants, or their privies in estate, whenever such result had not been forestalled by a voluntary non-suit. And in each

Primm, et al. v. Raboteau, et al.

of the cases tried, the evidence in all of its essential features has been precisely the same; settling beyond any reasonable doubt, the correctness of the location of the water boundary of the above mentioned lots as ascertained by the surveyors employed for that purpose in 1851. After a title involving directly the correctness of one and the same boundary, has been for *thirteen years* as thoroughly and satisfactorily tried in the courts as this one, it would seem high time for equitable interposition in response to the prayer for relief in the present case. (2 Sto. Eq. Jur., § 859.)

*The subjoined plat more fully explains my meaning.*

And it does not matter that precisely the *same piece* of ground should have been in suit in each instance; it is enough that the title of defendants or their privies in estate to lot 20, and as to what was the common water boundary between that lot and lot 3, were always the question, passed upon and adjudicated, and that successive juries by their verdicts invariably determined that the particular parcel of ground sued for, was part of lot 20 and not of lot No. 3. (State to use, etc. vs. Coste, 36 Mo., 437, and cas. cit.; Doty vs. Brown, 4 Comst., 71; Gardner vs. Bucklee, 3 Cow., 120; Kitchen vs. Campbell, 3 Wils. 304; Miles vs. Caldwell, 2 Wall., 35.)

But it is urged by appellants that inasmuch as John P. Reilly, one of the plaintiffs, and a minor, was never a party to any of the prior actions of ejectment, consequently the question in issue, has, as between him and Mincke or Mincke's privies, never been adjudicated. It is, however, sufficient to observe on this point, that he is a tenant, or more properly, a claimant in common with Skinner and others his co-plaintiffs, and that the right of the defendants or their privies to the property in dispute, has been, as heretofore stated, after repeated and satisfactory trials, fully established at law, and against such co-plaintiffs; and, therefore, Riley's *personal participation* in the previous suits is a thing of no importance, as his title hangs upon the same thread, and is dependent on the same facts, as that of his co-claimants, and has been incidentally and necessarily subjected to the tests of the concurring verdicts rendered against those, who in conjunction with him, lay claim to the property in dispute; and the same remarks are applicable to the claim of Mrs. Warren.

Were the rule otherwise than as above stated, it would be in the power of a number of persons claiming under the same deed, by bringing in turn, each in his own behalf, a series of actions of ejectment to harrass the defendant interminably, and thus defeat the beneficent purpose which gave origin in courts of equity, to bills of peace. So then, there was no error in holding that defendants were entitled to the relief granted, even against *him*, nor in ad-

mitting in evidence the records of previous suits between defendants or their privies with his co-plaintiffs. This view of the subject, renders an expression of opinion on the point argued by counsel, as to whether an infant who unites with adults in a pleading, is equally with them concluded thereby, unnecessary.

The proper construction to be given to the words contained in the deeds from the commissioners in partition of Auguste Chouteau's estate, "the middle of the natural channel of the creek when the pond is exhausted," has heretofore received the consideration of this court; (Primm vs. Walker, 38 Mo., 97; Mincke vs. Skinner, 44 Mo., 92) and the conclusion then arrived at, that those words meant the position of the thread of the creek when the pond was actually exhausted, will not now be departed from. But even were we inclined to question those decisions, it might well be presumed in the absence of aught in the record to the contrary, that the natural channel of the creek, when the pond was exhausted in 1851, and as marked and located in that year by Cozzens, Shultze and Hyer, remained as it was prior to the erection of the dam.

Again the decree entered in the court below, may *probably* be upheld on this additional ground: That equity will interfere to ascertain and fix boundaries, where the rights of a large number of persons are, as in the present case, affected, and a confusion of boundaries has been occasioned by lapse of time, accident or mistake, and a necessity arises therefrom, to adjust such conflicting claims and thus prevent interminable litigation. (1 Story Eq. Jur., § 621.)

And the jurisdiction of courts of equity in this regard, being an *ancient one*, is not curtailed or destroyed by reason of the enactment of a statute of this State for the perpetuation of boundaries, as no words in preclusion of equitable interference are employed in the acts referred to. (1 Sto. Eq. Jur. § 64 i. 80, 11th. Ed.)

But without expressly holding this a case in which equity ought to interfere, because of confused boundaries, it is suffi-

cient to say that the court below, having found the allegations of the answer true, and that in consequence, the relief therein prayed for ought to be granted, was fully warranted in making its decree in that behalf effectual, by directing that the disputed boundary be surveyed and marked in a permanent manner, thus putting forever at rest a subject of *chronic contention.*

Judgment affirmed; Judge Napton did not sit; the other judges concur.