————o————

REAL ESTATE SAVING INST., Appellant, *vs.* JOHN COLLONIOUS, Respondent.

1. *Partition sale—Decree setting aside—Purchase lis pendens.*—Action brought against the purchaser to set aside a partition sale for fraud, having been determined for defendant, was appealed to the supreme court, and after reversal of the cause the defendant gave his deed of trust on the land. A few days subsequent to the date of the deed the cause was remanded, the sale canceled and the property re-sold. *Held,* that one holding under the deed of trust took with notice of the *lis pendens* and could not maintain ejectment against the purchaser at the second judicial sale; *nor was it material that the mandate* did not reach the lower court for some days after the execution of the deed; nor that the appeal bond was for a trifling amount; nor that the lower court on becoming again possessed of the cause, proceeded without appointing commissioners to ascertain the interests of the parties and to re-sell accordingly. When a court of equity once acquires jurisdiction of a cause it should avoid a multiplicity of suits by doing complete justice between the parties. And its jurisdiction in respect to partition is not curtailed or ousted by the statute pertaining to that subject. In any event the action of the court in canceling the former sale in partition was merely voidable and could not be attacked collaterally in the ejectment suit.

*Appeal from St. Louis Circuit Court.*

*Martin & Lackland*, for Appellant.

The proceedings in the Supreme Court prosecuted by the plaintiff to reverse the judgment rendered in the land court, did not constitute notice under the circumstances of this case.

I. The bond taken was inadequate to indemnify the defendants against the injury of tying up their property.

After final decree in favor of defendants, in an injunction suit, the restraining effect of the injunction is dissolved. Why should a *lis pendens* be of greater force than an injunction? If during the appeal the defendant disposed of the property, the judgment at the next trial should be for damages.

II. The purchaser under the sheriff's sale in the Northcraft case, acquired title long after they had legal notice of the plaintiff's title. No sane man would have purchased at that sale without examining the county records.

There never was a *lis pendens*, even in the land court, affecting more than the share of Ellen J. Northcraft, which was 2-30 of the land. She, as plaintiff, had no equity to disturb the rest of the title.

The sale of the interest of Martin himself, and all the other defendants, rests upon the consent of the parties alone. And the facts that the sale took place under the form of a sheriff's advertisement does not change its legal effect. And the plaintiff's title here, going back of this voluntary transfer of title by defendants, is first in time and in equity. (See generally LeNere vs. Le-Nere, 2 Lead. Cas. in Eq. p. 170 [3rd Am. Ed.] ; Jones vs. Lusk, 2 Met. [Ky.] 356 ; Allen vs. Case, 13 Wis. 621 ; Davis vs. Christian, 15 Gratt. [Va.] 11 ; Harrington vs. Slade, 22 Barb. 166 ; McCutcheon vs. Miller, 31 Miss. 65 ; Diamond vs. Laurence, 37 Penn. 353 ; Ehrman vs. Knidrick, 1 Met. [Ky.] 146 ; Camp vs. Forrest, 18 Ala. 112. )

*Lee & Adams*, for Respondent.

Appellant took with notice of the Northcraft bill under the doctrine of *lis pendens*. (Sto. Eq. Jur., vol. 1, §§ 405, 406 ; Carter vs. P. & M. Bank, 22 Ala. 743 ; Hayden vs. Buck-

lin, 9 Paige Ch. 512 ; Sugd. Vend., 2d vol. 281 ; Newl. Cont. p. 506 ; 7 Blackf. 243 ; Murray vs. Ballou, 1 Johns. Ch. 576, and cases cited; Murray vs. Lylburn, 2 Johns. Ch. 441, and cases cited.)

Having acquired jurisdiction of the subject matter of the suit, the land court had jurisdiction for all purposes to do full and complete justice between the parties. (Corby vs. Bean, 44 Mo. 379 ; Rozier vs. Griffith, 31 Mo. 171 ; Cox vs. Smith, 4 Ch. 275 ; Hasford vs. Mervin, 5 Barb. 62.)

If there was any irregularity in the order of sale, appellant cannot avail itself of it in this proceeding. (Bernecker vs. Miller, 44 Mo. 102 ; Martin vs. McLean, 49 Mo. 361 ; Miles vs. Davis, 19 Mo. 408.)

SHERWOOD, Judge, delivered the opinion of the court.

Plaintiff sues in ejectment for the recovery of a lot on the corner of Ninth and Buchanan streets in the city of St. Louis.

The answer of defendant was a statutory general denial, and also an equitable defense showing that a partition sale on which plaintiff's title was ultimately dependent, had been set aside and the deed made in conformity thereto canceled by the decree of a court of equity ; that while the proceedings were pending in that court, plaintiff, with notice of such pendency, loaned W. C. Martin, who had purchased at the sale sought to be set aside, a sum of money, and that under the deed of trust, given to secure this loan, a sale had taken place, and plaintiff had become the purchaser and recipient of a deed during the pendency of the proceedings in equity, and with notice thereof. It was also alleged that the Metropolitan Bank of St. Louis, of which defendant was the tenant, had derived title to the premises in dispute in 1865 through the medium of a sale ordered by the court, which had decreed the cancellation of the deed made to Martin.

The reply, among other things, denied any notice, knowledge or information of the pendency of the suit referred to at the time Martin executed the deed of trust.

At the trial, Lewis Martin was acknowledged as the common source of title in May, 1851. The records introduced in evidence·

by the parties litigant in support of their respective claims show, in substance, this state of facts:

That in a partition suit, instituted in the St. Louis land court by the heirs of Martin in consequence of the premises, the same now sued for, being incapable of division in kind, an order of sale was made in February, 1857, followed by a sale in the next May, and a deed by the sheriff to Wm. C. Martin, one of the heirs, in the June following; that in August, 1859, Martin, to secure the plaintiff in the loan of a sum of money to him, executed a deed of trust on the land in dispute; that in October, 1861, default having been made in the payment of the debt, a sale occurred whereat plaintiff became the purchaser, receiving a deed from the trustee; that in the St. Louis land court, Ellen Northcraft, one of the heirs of Lewis Martin, together with her husband, instituted suit against Wm. C. Martin and the other heirs to set aside the partition sale and cancel the deed made to him, on the ground of fraud; that in this suit general relief was also prayed; that service was had as to all the defendants in September, 1857; that judgment on a demurrer filed by them to the petition went in their favor; that on appeal taken at the same term, March, 1858, the Supreme Court, in June, 1859, reversed the judgment and remanded the cause to the land court, where, after answer by defendants, an interlocutory decree was entered, setting aside the sale and deed to Martin, ordering a new sale with a reference, to determine the respective interests of the parties thereto; that subsequently, at the March term, 1865, on the coming in of the referee's report, a final decree was entered ordering a sale of the premises and disbursement of the proceeds therefrom arising, in accordance with the interests of the parties as previously ascertained; that this sale thus ordered took place in that year, and a deed was made by the sheriff conveying the disputed premises to Adolph Fisher, who, in turn, conveyed to Deggendorf, and he to defendant's landlord, the Metropolitan Bank.

The court below found for plaintiff and gave judgment accordingly, which was reversed in general term, and plaintiff has appealed here.

Real Estate Saving Inst. v. Collonious.

There is nothing incident to the facts of this case even re-
motely tending to exempt it from the operation of the rule rela-
tive to pending suits which the defendant has invoked.   What-
ever rights plaintiff acquired had their origin in the deeds of trust
executed by Martin in August, 1859, after a judgment in his fa-
vor had been reversed in the Supreme Court and the cause re-
manded.   The fact that the mandate did not reach the lower
courts until several days subsequent to the execution of the deed
of trust does not and cannot alter the principle necessarily ap-
plicable to such cases.   The cause of Northcraft against Mar-
tin was still pending and undetermined, and this was notice to
the world that the subject matter of that suit, to-wit, the premises
now sued for, were in litigation and awaiting such decree as the
court might render.   Nor is the result at all affected by the small
amount of the appeal bond given by the plaintiffs when taking
their case before the appellate court, for the obvious reason that
whether a bond had been given or not, would not change the
complexion of the case, since the simple appeal would have ope-
rated as effectually, so far as concerns the doctrine in question,
as though recognizance for the largest amount had been executed.
It is the manifest policy of the law that there should be an end
to litigation, but this manifest policy would be easily thwarted if,
during the pendency of suit, a stranger to the suit could, by
purchase from one of the suitors, acquire new and independent
rights—rights unaffected by and not subject to the litigation
then in progress.   It is wholly unnecessary to enter on a discus-
sion of the doctrine of *lis pendens*.   We only purposed by the
foregoing observations to show that the case at bar is fully with-
in the limits of a very general and a very beneficial rule.
(O'Reilly vs. Nicholson, 45 Mo. 160 ; Turner vs. Babb, 60 Mo.
342.)

Nor is it any valid ground of objection to the decree in the
Northcraft case, that the land court not only set aside the sale
and conveyance as prayed, but without appointing commission-
ers, proceeded further, ascertained the interests of the parties
litigant, and decreed a sale of the premises and distribution of
the proceeds of the sale in accordance with the rights of the liti-

gants. And this is apparent for several reasons. Among them are :

The court had the subject matter of the suit within its grasp ; had jurisdiction of that and likewise of the parties ; and the doctrine is too well settled to admit of either discussion or dispute, that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. It will not content itself in this regard by any half way measures ; it will not declare that a party has been defrauded of his rights and then dismiss him with a bland permission to assert, at new cost and further delay, those rights in another forum. (Corby vs. Bean, 44 Mo. 379 ; Rozier vs. Griffith, 31 Mo. 171 ; Keeton vs. Spradling, 13 Mo. 321 ; Primm vs. Raboteau, 56 Mo. 407 ; McDaniel vs. Lee, 37 Mo. 204 ; 1 Sto. Eq. Jur. §§ 64 K, 71 ; Russell vs. Clark's Exr's, 7 Cr. 69 ; Armstrong vs. Gilchrist, 2 Johns. Cas. 424 ; Lerdy vs Verder, 2 Cain. Cas in Err. 175 ; Smith vs. Sutton, 24 Gratt. 191.) And again, courts of equity have assumed a general concurrent jurisdiction with courts of law in all cases of partition, and "it is not now deemed necessary to state in the bill any peculiar ground of equitable interference." (1 Sto. Eq. Jur. § 658, and cases cited.) Besides the jurisdiction of these courts in respect to partition being an ancient one (1 Sto. Eq. Jur. § 646, and cas. cit.), it is not curtailed or ousted by reason of the enactment of the statute in relation to partition ; since no words in preclusion of equitable jurisdiction are employed in the act referred to. (1 Sto. Eq. Jur. §§ 64 i, 80 ; Primm vs. Raboteau, *supra ;* Stewart vs. Caldwell, 54 Mo. 536 ; Pratt vs. Clark, 57 Mo. 189.)

But conceding that the court erred in the course it pursued, its acts were not wholly void, and could not therefore be overthrown by a collateral attack, as in the present instance attempted. Besides, its power to set aside the sale and deed to Martin cannot be gainsayed ; and this disposes of the case so far as plaintiff is concerned, because that portion of the decree effectually extinguished whatever semblance of title either Martin or the plaintiff possessed. So that it is a matter of no moment whether defend-

ant's landlord acquired any title by reason of the purchase and deed in 1865, or not.

Upon no theory of the case, then, is the plaintiff entitled to recover. It comes into court without a title of its own, and is in no plight to attack that asserted by its adversary.

For these reasons we shall affirm the judgment of the general term. Judges Napton and Hough concur; Judge Wagner absent.