JAMES DAMERON ET AL., Defendants in Error, *v*. ALFRED M. JAMISON, Plaintiff in Error.

| 4 | 299 |
| 95 | ¹476 |

June 26, 1877.

1. In a suit to correct a deed, and for partition, it appeared that the father of A., B., and C., before his death, made and recorded a deed conveying to A., without his knowledge, certain real estate; that D. agreed with A. to purchase the property of him and his sisters, B. and C., at a certain price; that afterwards D. discovered the deed on record, of which A. was ignorant, and by suppressing the truth and making false suggestions, induced A. to convey to him all his interest in the land for one-third the price agreed upon for the whole tract. *Held*, that it was not error to correct the deed so as to convey an undivided one-third only of the land; and that, equity considering the contract established according to the intention of the parties at the commencement of the suit, there was no misjoinder of causes of action.

2. As against one who claims in fraud of her rights, equity will give effect to a deed made by a married woman, in which her husband does not join, where the assent of the husband may be assumed.

3. Fraudulent purchasers are not entitled to have money expended in improvements of the property refunded.

4. It is no abuse of the discretion of the trial court to allow plaintiff to amend his petition, where a continuance is had to the next term.

ERROR to Lincoln Circuit Court.

*Affirmed.*

NORTON & MARTIN, for plaintiff in error: Partition will not lie where defendant is in adverse possession. — *Gravier* v. *Ivory*, 34 Mo. 522. There was a misjoinder of causes of action. — *Lambert* v. *Blumenthal*, 26 Mo. 471; *Rozier* v. *Johnson*, 35 Mo. 326; *Forder* v. *Davis*, 38 Mo. 107; *Shaw et al.* v. *Gregore*, 41 Mo. 407. It was error to allow plaintiff to annul his petition. — Big. on Estop. 578; *Rodermund* v. *Clark*, 46 N. Y. 354. Estoppel. — 1 Greenl. on Ev., sec. 23; *Crane* v. *Morris*, 6 Pet. 598; *Skinner* v. *Stouse*, 4 Mo. 93; *Rice* v. *Bunce*, 49 Mo. 231; *Huntsucker* v. *Clark*, 12 Mo. 333; *Taylor* v. *Elliott*, 32 Mo. 172; Story's Eq. Jur., sec. 1542. No one is entitled to the aid of a court of equity when that aid becomes necessary to relieve against his own fraud, or the fraud of his parents. — *Ober* v. *Howard*, 11 Mo. 425; *Henderson* v. *Henderson*, 13 Mo. 151.

McKEE & McFARLAND, for defendants in error: There was no misjoinder of causes of action. — *Spitts* v. *Wells*, 18 Mo. 468; *Welch* v. *Anderson*, 28 Mo. 293; *Rozier* v. *Griffith*, 31 Mo. 171; *Henderson* v. *Dickey et al.*, 50 Mo. 161; *Real Estate Savings Institution* v. *Collinsan*, 63 Mo. 290. Adverse possession. — *Wommack* v. *Whitmore*, 58 Mo. 448. Page did not acquire title to the whole tract by virtue of the deed from his father, being in ignorance of its existence and refusing to claim under it. — *Kingsbury* v. *Burnside*, 58 Ill. 310; *Hawkins* v. *Pike*, 105 Mass. 500; *Rogers* v. *Cary*, 47 Mo. 231. He who holds by fraudulent title has no claim for money expended in improve-

ments.—*Ridgley* v. *Holiday*, 59 Mo. 444; *Mann et al.* v. *Bert et al.*, 62 Mo. 491.

HAYDEN, J., delivered the opinion of the court.

This is a suit in equity to correct a deed made by one F. W. Page to the defendant, on the grounds of mistake on the part of Page and fraud on the part of the defendant, and for partition of the land. The bill, in substance, states that one E. Page died, leaving as his only heirs three children, — a son, F. W. Page, and two daughters, Helen Page and Rosina Strange; that, while in embarrassed circumstances, E. Page conveyed to his son, without his son's knowledge or consent, by deed duly acknowledged and recorded, certain real estate in Lincoln County; that in 1873, long after the death of his father, while in ignorance of this deed, and believing he owned only one-third of the land, the son, F. W. Page, sold to defendant one undivided one-third, and, as Page thought, conveyed his one-third to the defendant; that F. W. Page at the time thought that his sisters owned the other two-thirds; that the defendant, having learned of the execution of the deed from E. Page to his son, with intent to defraud, etc., had a deed prepared and signed by F. W. Page to himself, which conveyed the entire tract. The plaintiff claimed the equitable title to two-thirds of the land by conveyance from the daughters. The answer admits the making and recording of the deed from the father to the son; claims that it passed the full title; denies all fraud; and asserts title in the defendant to the whole tract by the deed from F. W. Page. The answer further sets up title, by an agreement from the sisters and by certain tax deeds, to the land, and alleges that defendant made improvements, etc. The reply denies the affirmative allegations of the answer.

There was a trial, and the case was submitted to the court, when the plaintiffs asked and obtained leave to amend their petition by inserting the words, " They further say

that they have purchased, also, and hold deed for legal title to, said land from F. W. Page." The cause was then continued, and was tried at the next term. At the trial the plaintiffs introduced a quitclaim deed from F. W. Page and wife to plaintiffs, of date February 12, 1875, conveying the land for the consideration of $10 ; also a quitclaim deed from Ellen Page and Rosina Strange, the daughters, to plaintiffs of date April 18, 1874, conveying the land for $90.

The material part of the oral evidence introduced at the trial was that the defendant went to F. W. Page with a view to purchase ; that the result of this interview was that a written agreement was drawn up, which was signed by Page for himself and his sisters, stating that they had sold to the defendant the land for $85, $10 of which was paid down, and that the remaining $75 were to be paid as soon as the deed could be made. This writing was dated September 16, 1873, and the defendant paid Page $10 on receiving it. Shortly after this the defendant went to Troy, and there learned of the deed from E. Page to F. W. Page, and that by the records the legal title to the whole tract was in the latter. It appears that the defendant obtained and paid for an abstract of the title, and was advised that if he got F. W. Page's deed he would have a good title to the entire tract. The defendant then went to F. W. Page, and asked him for what amount he would make his deed of the land to defendant, concealing from Page the facts as to the deed from his father. Page said he would make his deed for $25, which the defendant agreed to give, saying that if he wanted the sisters' deeds he would get them. On the next day Page and wife went with the defendant before a justice of the peace, who testifies that he took the acknowledgment, and at the time asked Page, in the presence of the defendant, if he was selling his prairie land, and that Page replied that he was only selling his interest in his father's land. The deed thus made, which was put in evidence by the defendant, shows a consideration of $35, and

on its face conveys the whole tract. Page testifies that he thought it was a deed of one-third of the land, and says that, in reply to a question asked him by the justice, in the presence of the defendant, he, Page, said that he was selling his interest in his father's land. This interest, Page testifies, he understood to be one-third, and that his sisters owned the other two-thirds. He states that he knew nothing of the deed from his father until after he had made the deed to the defendant. It seems that he had no authority to sign his sisters' names to the writing which he gave to the defendant in regard to the land.

It appears that one of the plaintiffs went to Page to buy the land, and that Page said he had sold his interest to the defendant, but that his two sisters would sell their interests. The plaintiff Dameron then went to the sisters and bought their interests, as appears by the deed put in evidence for the plaintiffs. Afterwards, and while they knew of the deed from Page to defendant, the plaintiffs procured from Page the deed of February 12, 1875. In regard to this deed Page testifies that when he made it he claimed no interest in the land, but thought he might as well make $10 as not.

There was evidence of other witnesses, tending to show that the defendant made statements to the effect that he had made a contract with Page and his sisters for this land, and that, after he had made the contract, he went to Troy, and there learned that the whole title was in F. W. Page, and that that was as good as he (defendant) wanted. The defendant relied on the deed from E. Page to F. W. Page, on the deed from F. W. Page and wife to defendant, on the writing of date September 16, 1873, on his tax deeds, and on the oral testimony of defendant.

The court below decreed that the deed from Page and wife to defendant be corrected so as to convey to him one-third of the land, and for partition accordingly; and the defendant brings this case here by writ of error.

From what has been said it is clear that there was a mistake upon the side of one of the parties to the contract, and fraud upon the part of the other. The minds never met as to the terms, as written, for Page had agreed to convey, and thought he was conveying, only his one-third interest. The defendant, on the other hand, knew that Page had agreed to convey, and that Page thought he was conveying, only his one-third interest. As one party to a contract should be bound according to the sense in which he understands that the other party understands the agreement, the contract should be considered a transfer of a one-third interest, and equity proceeds upon the basis that such was the contract. It is true that by the writing of date September 16, 1873, Page, signing his own name and the names of his sisters, agreed to convey the land; but Page showed no authority to use their names, nor does the defendant prove Page had any. The deed did not, therefore, carry out any contract the sisters had made. Their interest remained unconveyed, and, as against them, it cannot be considered that F. W. Page either transferred, or had any right to transfer, the entire tract. He did not own it, as he had never accepted the deed from his father; nor will equity presume, on the facts of this case, that he did accept the deed as against his sisters. The deed to the defendant, as prepared by him, expressed the design which the defendant intended to accomplish, not terms assented to by contracting parties. The defendant suppressed an important fact within his own knowledge, which, if disclosed, would have altered the very basis on which the parties contracted; and when this is the case, though the general principle is that mere non-disclosure is not equivalent to fraud, it has been said that there is no distinction between *suppressio veri* and *suggestio falsi*. *Warner* v. *Daniels*, 1 Woodb. & M. 90; *Smith* v. *Richards*, 13 Pet. 26; Adams' Eq., 4th Am. ed., *178, and notes. In the present case, however, we are not forced to resort to this doctrine, as the conduct of the

defendant was active. He first negotiated for the sisters' title; then, having procured an abstract from the records, he made remarks to Page, in regard to the sisters' title, tending directly to induce Page to believe that all the title he wished the latter to convey was his own share, and to confirm Page in the belief that he (defendant) thought there was still title in the sisters. After making these remarks, the defendant had the deed prepared in form to convey the entire tract, and caused Page to execute and acknowledge the deed, in spite of the declaration of Page, as testified to by the latter and the justice, that he (Page) was selling only his interest in his father's land. The defendant, moreover, according to his own account, paid only $35 for the whole tract, when, by the writing on which he relies, he agreed to give $75 for the land, and when he knew that Page had insisted that each one-third interest was worth $25. Thus, if the title to the entire tract had been in Page, the facts are such that the defendant cannot sustain his title by virtue of what took place between himself and Page.

The question then arises, Was the deed of the sisters sufficient to pass their title to the plaintiffs, one of the sisters being a married woman and the husband not joining in the conveyance? As against the defendant, who has no title from the sisters, and who claims in fraud of their rights, it was. No question as to the married woman's liability, or as to her husband's rights, is here presented. The contracts of a married woman are not absolutely and under all circumstances void. Thus, she may purchase or accept an estate, and, subject to the approval or dissent of her husband, it vests in her in the meantime. 2 Roper on Husb. & Wife, *109. To uphold the rights of a married woman, as against a party claiming in fraud of those rights, equity will give effect to what are plainly her intentions. It will sometimes, to prevent injustice, enforce the contract of a feme covert even against her. *Glass* v. *Warwick*, 40. Pa.

St. 140. But where the property in question, though not her separate estate, comes from her side, and when, as here, the assent of the husband to her deed may be presumed, equity will give effect to that deed as against an opposing party whose claims rest upon fraud. If the defendant in this case can prevail against the plaintiffs, he could have prevailed against the sisters; but he could have prevailed against the sisters only on the basis that equity would sanction acts of his by which they were fraudulently deprived of their property.

It is claimed by the plaintiff in error that an action for partition will not lie where there is adverse possession, and that there was a misjoinder of causes of action. But the prayer for partition is here merely auxiliary, and does not address itself to the court till the facts are found. In the eye of equity, it is the contract now established which was made at the date of the deed, and not that fraudulent instrument as it appears on its face. There is no more a misjoinder of causes of action here than there is where a plaintiff asks a court of equity to reform a policy of insurance, and in the same prayer asks a decree for the amount of the loss. In such cases, to prevent unnecessary litigation, equity, following out its maxim that what ought to be done is considered as done, allows the plaintiff who makes out his case to proceed upon the basis that he had, at the time of bringing his suit, obtained the relief to which he is entitled. *Henderson* v. *Dickey*, 50 Mo. 161; *Real Estate Savings Inst.* v. *Collonious*, 63 Mo. 290.

It does not appear that the court made an improper use of its discretionary power in permitting the plaintiffs to amend after the cause was submitted. The case was continued, and the defendant had full opportunity of defence at the succeeding term. • The amendment did not, in effect, contradict the rest of the petition. In this equitable action both deeds were facts of evidence on which the plaintiffs relied to make out their case. They had a right to so pre-

pare their proofs as to meet different legal views, which possibly might be taken.

The tax deeds offered in evidence contained no sufficient recitals of facts as to the giving the notice and the making the advertisement required by law, but gave merely the opinion of the officer on these points, and showed no title in the defendant. *Large* v. *Fisher*, 49 Mo. 307; *Spurlock* v. *Allen*, 49 Mo. 178; *Yankee* v. *Thompson*, 51 Mo. 234.

The plaintiff in error is not in a position to ask relief as to money expended by him upon the land for improvements and taxes, nor is there any such prayer in the answer. All the judges concurring, the decree of the court below will be affirmed.