BLOCK, *Receiver*, v. ESTES, *Administrator, Appellant.*

1. **Co-sureties :** CONTRIBUTION: SHERIFF'S BOND. To an action by a surety, who had also been deputy sheriff, for contribution against his co-sureties for money paid to discharge a judgment on the official bond of the sheriff, it is a valid defence that it was the wrongful and negligent acts of the deputy sheriff, in his official capacity as such deputy, done without the knowledge or consent of the sheriff, that created the liability of the latter which resulted in the judgment against him and his sureties.

2. **Objections to Evidence :** SUPREME COURT. The grounds of objection to the reading in evidence of the record of the proceedings of· a court appointing one a receiver must be specifically stated, or such objection will be disregarded in the Supreme Court.

3. **Appointment of Receiver :** COLLATERAL PROCEEDINGS: MOTION TO VACATE. The regularity of the appointment of a receiver cannot generally be questioned in collateral proceedings; the remedy being by motion to vacate the order of appointment.

*Appeal from Pike Circuit Court.* — HON. W. W. EDWARDS, Judge.

AFFIRMED.

*T. J. C. Fagg* and *M. G. Reynolds* for appellant.

(1) There is no record evidence of the fact that respondent Block was ever appointed receiver of the Bank of Pike County, or that he was, by order of any court, authorized to sue in his own name to collect any debts or obligations due the said bank. (2) The cause of action stated in the petition was not a debt due the Bank of Pike County, but an equitable claim for contribution in favor of Francis C. Wiseman against his principal and co-sureties in a sheriff's bond, which he assigned to respondent as receiver of the Bank of Pike County, as part payment of his indebtedness to said bank. (3) The assignor of this claim, Francis C. Wiseman, was not

only security on the official bond of Patrick F. Lonergan, sheriff of Pike county, but he was the deputy of the, said Lonergan, and had the entire and exclusive charge of the legal process under which the cause of action in favor of W. G. and A. W. Brockway, and against the said sheriff and his securities, originated. The breach of the bond was his own act and not the act of the principal, Patrick F. Lonergan. (4) The judge of the third judicial circuit had no authority to appoint a receiver, either in vacation or term time, upon the *ex-parte* application of the board of directors of an insolvent banking institution. A receiver so appointed could derive no authority to sue for, collect, manage, or dispose of the claims and assets of said bank by virtue of such appointment. (5) The objection to the paper signed by the judge of the third judicial circuit court appointing Mr. Block receiver should have been sustained. On its face is disclosed a want of jurisdiction, it not being by virtue of any statutory provision authorizing the appointment of receivers, nor in aid of any suit then pending which would authorize the appointment of a receiver *pendente lite*. (6) The court should have given the instructions asked by defendant. *Schofield v. Gaskell*, 60 Geo. 277; *Owen v. McGehee*, 61 Ala. 447. (7) The instructions given for the plaintiff do not declare the law properly.

*W. H. Biggs* for respondent.

(1) The objection made by appellant to the reading in evidence of the proceedings of the Louisiana court of common pleas, appointing plaintiff receiver for the Bank of Pike County, cannot be insisted on by appellant in this court. The record fails to show the specific and particular objection to the testimony. Failing in this, the presumption is, the objection was waived. *Railroad v. Moore*, 37 Mo. 338; *Margrave v. Ausmuss*, 51 Mo. 561;

*Primm v. Raboteau*, 56 Mo. 407. (2) The court not only had an equitable right to appoint plaintiff receiver for the bank, but our statutes also authorized it. R. S., secs. 3660-1; *Ficklinkaum v. Gamb*, 68 Mo. 289; Kerr on Receivers, 1. (3) The regularity of the appointment of a receiver cannot be questioned in a collateral proceeding. High on Receivers, secs. 203 and 238. (4) Plaintiff, as receiver, had authority to maintain this action. R. S., secs. 3660 and 3661; *Van Petten v. Richardson*, 68 Mo. 379; R. S., sec. 3914. (5) The pleadings and the evidence still show that plaintiff was the trustee of an express trust; that the contract made with Wiseman by plaintiff, and in his name, in reference to the transfer of his (Wiseman's) right of contribution against the defendant was for the use and benefit of the Bank of Pike County, and under our statute the suit was properly brought in plaintiff's name. R. S., 1879, secs. 3462 and 3463; *Taylor v. Campbell*, 20 Mo. 259; *Rodgers v. Gosnell*, 51 Mo. 466; *Wright v. Tinsley*, 30 Mo. 389; *Beatty v. Lett*, 28 Mo. 596. (6) The instructions asked by defendant and refused were properly denied.

RAY, J.—This action is brought to enforce contribution, as between co-securities, on the official bond of one Lonergan, who was sheriff of Pike county, Missouri, the said securities being F. C. Wiseman, assignor of plaintiff, Nelson B. Griffith, the original defendant (and since deceased), E. F. Mathews, and W. A. Gunn.

A judgment was obtained by W. G. and A. G. Brockway against said sheriff and his securities, which was paid off by said Wiseman, the amount of said judgment, so paid, being one thousand dollars. Said Lonergan, the principal in said bond, and, also, said Mathews, are insolvent, and the purpose of this suit is to compel said Griffith to contribute the sum of $333.33⅓, or, one-third of the judgment for one thousand dollars, so paid by said Wiseman. The main defence, upon the

merits, is, that said Wiseman was not only a co-security with defendant upon said bond, but that he was, also, acting as a deputy sheriff under said Lonergan, and that it was his wrongful and negligent acts, in his official capacity as such deputy sheriff, that created the liability of said sheriff, which resulted in said judgment against the sheriff and his securities, and that, under such circumstances, the right of contribution does not exist.

It appears that W. G. and A. G. Brockway brought suit by attachment, which was levied on certain property of J. D. Harrison & Company, defendants therein, on August 5, 1870, and thereafter, and on the tenth day of the same month, certain other attachments, in favor of several other plaintiffs, were levied on the same property of said defendants. Judgment was first obtained, and the property subsequently sold, under execution, in these latter cases, and purchased by Carstarphen, as agent for Dyer, who was attorney for plaintiffs therein, for the sum of $801.85. Said Carstarphen paid said Wiseman the costs, amounting to some seventy dollars, by a check on said Dyer, and also gave said Wiseman the following memorandum, in reference to said purchase:

"$731.50.          LOUISIANA, Mo., Dec. 13, 1870.

"This is to certify that I, this day, bought the safe and fixtures of the City Savings Bank, for $801.85, and gave the sheriff a check on D. P. Dyer's account for $70.35, leaving $731.50 due the sheriff from D. P. Dyer, for the proceeds of sale, to be applied on two executions, in which Dyer is attorney.

"J. E. CARSTARPHEN, for D. P. Dyer."

Subsequently, said Dyer endorsed said executions, under which Wiseman, as such deputy sheriff, had sold the property, as follows:

"Received, December 13, 1870, of F. C. Wiseman, deputy sheriff, $731.50, on this and an execution in favor of Blum & Bro., and against same defendants."

It appears, from the answer of defendant, and the evidence, as offered at the trial, and in behalf of the parties plaintiff and defendant, and the instructions given in the cause, that the main issue and question in the cause was, whether the said application of said sums arising from the sale of the property, under said executions, was with the knowledge and consent of said Lonergan, or was the individual and personal act of said Wiseman, as deputy sheriff, and without the direction, assent and knowledge of his principal, Lonergan, sheriff as aforesaid. On this branch of the case, the jury, in the instruction given in behalf of plaintiff, were told, among other things, that if Wiseman, whilst acting in the capacity of such deputy sheriff, created the liability which led to said judgment (in favor of Brockway), by his own negligent and illegal acts, without the direction, consent, or approval of the sheriff, Lonergan, then there was no right to contribution, and the finding must be for the defendant. The same rule was announced in the instruction given in defendant's behalf, and at his instance, as follows:

"If the jury believe, from the evidence in the case, that F. C. Wiseman, as deputy sheriff, sold the property at sheriff's sale, which has been shown by the evidence to have been seized under attachment in favor of A. W. and G. W. Brockway, and against J. D. Harrison & Co., and without the direction, assent, or knowledge of his principal, P. F. Lonergan, applied the proceeds of said sale, or surrendered said property, for the payment of other claims against J. D. Harrison & Co., which were under the control of D. P. Dyer, to one James E. Carstarphen, then if the jury should so find the facts to be, the plaintiff cannot recover, and the verdict should be for the defendant."

These instructions very fully and fairly submit the substantial and meritorious defence made in the answer,

and upon this issue the evidence is manifestly and plainly conflicting. As to this question of the wrongful distribution of the money, upon the returns of said execution, and whether the same was without the knowledge, consent, or direction of Lonergan, the following extracts, in substance, from the testimony will be sufficient to show that the verdict is supported by the evidence. Wiseman, for example, testifies that a few days after the sale, he told Lonergan what he had done, and showed the statement made out by Carstarphen at the time of the sale; that Lonergan folded the same up and put it in his pocket; that afterwards, when he came to make his returns on said executions, he asked Lonergan what return he should make as he did not collect the money, and that Lonergan told him to go to Dyer, who would make up his return for him. Dyer testifies that after the sale he met Lonergan and talked with him about the sale, proceeds, etc., and what he proposed to do, and that Lonergan told him to see Wiseman and have the endorsements made on the executions, and that he went to Wiseman and made and entered the receipt and endorsement previously referred to in said orders of sale.

Lonergan testified among other things, in substance, that Wiseman told him, a few days after the sale, what he had done in regard to the sale and the proceeds; that he had taken Carstarphen's receipt, which Wiseman, he thinks, showed him at the time, and in his cross-examination he says, with some qualification, but in effect and substance, that he thinks Wiseman showed him the said statement taken from Carstarphen, which he thinks he read, and that he may have said it was all right. The testimony of both Wiseman and Carstarphen, also tends to show, that said Wiseman insisted on having the money, but finally waived, at least for the time being, payment of the same, upon the representations that the

arrangement would be satisfactory to said Lonergan, and that it ought, therefore, to satisfy him. So far as this distribution of said proceeds is concerned, said sheriff, as the evidence indicates, relied upon Dyer, rather than on his deputy, Wiseman. Said Lonergan was aware, as he testifies, of the pendency in said court of said suit on the part of said Brockways against said Harrison & Company, and that the other creditors in the attachment suits were contesting the same.

The evidence was, we think, before the jury under proper instructions. As to the objection to the use of the words, "direction, consent, or approval," in said first instruction for plaintiff, it is sufficient to say that the same or equivalent expressions are used in said instruction given for defendant and at his instance.

A further exception was taken to the reception in evidence of the proceedings of the Louisiana court of common pleas, appointing plaintiff receiver for said bank, but as the objection and exception was general, and not specifically stated, it was properly disregarded by the court. *Primm v. Raboteau,* 56 Mo. 412; *Margrave v. Aussmuss,* 51 Mo. 561. Generally, the regularity of the appointment of the receiver cannot be questioned in collateral proceedings, but the remedy, in that behalf, is by motion to vacate the order. High on Receivers, secs. 203, 238.

Finding no error in the record calling for our interference, we affirm the judgment, and it is so ordered. All concur.