JAMISON, *Administrator, et al.* v. BAGOT *et al., Appellants.*

DIVISION TWO.

1. **Fraudulent Conveyance**: CREDITOR'S BILL: PETITION. In an action to subject lands to the satisfaction of a judgment, the petition charged that the legal title thereof was in one to whom the judgment debtor had conveyed without consideration, and in fraud of creditors, but stated that the wife of the latter claimed to own the lands, and that she was, therefore, made a defendant. *Held,* that under such petition it was competent to introduce evidence impeaching the wife's title.

2. ———: ———: AMENDMENT. Where, after the institution of such action, the legal title passed to the wife, it is not necessary for plaintiffs to amend their petition, though they may do so if they choose.

3. ———: ———: EVIDENCE. In such action the pleadings and the interlocutory and final decrees of the prior action establishing the debt brought against the husband alone are admissible in evidence against both the husband and wife, on the question of the husband's indebtedness and the issue of fraud.

4. Evidence: GENERAL OBJECTIONS. Where the evidence offered is admissible for some purpose, a general objection that it is incompetent and irrelevant is rightly overruled.

5. ———: JUDICIAL DOCUMENTS. Judicial documents, it seems, are not admissible in evidence to prove the facts alleged in them.

6. Fraudulent Conveyance: EVIDENCE: ESTOPPEL. Where a debtor's wife charged to hold property of her husband in her own name in fraud of his creditors claims that she derived the money with which to purchase it from land conveyed to her trustee fourteen years before by her husband, the fact that a creditor wrote such deed does not estop him from showing there was no consideration therefor.

7. ———: ———. The introduction by plaintiff of a deposition of the wife taken in another proceeding does not make her his witness and prevent him from impeaching her statements, she being a party to the suit.

8. The Evidence in this case examined and *held* sufficient to support the finding that the property in controversy was bought with the husband's, and not with the wife's, money, and that it was held by the latter in fraud of his creditors.

*Appeal from St. Louis City Circuit Court.*—HON.
L. B. VALLIANT, Judge.

AFFIRMED.

*M. Kinealy* and *James R. Kinealy* for appellants.

(1) On the trial the plaintiff abandoned the case stated in his petition, and without warning sprung a new case of fraud, affecting Mrs. Bobb's title to the property, which was not alluded to in his petition, and was based on an entirely new theory. This demands a reversal of the judgment. The particular acts of fraud and the particular case on which recovery is sought must be fully stated in the petition. *Reed v. Bott*, 100 Mo. 62, and cases cited; 2 Dan. Ch. Pr. [Perk. Ed.] 856, and cases cited in note; Gresley's Eq. Ev., pp. 158,

Jamison v. Bagot.

159, 160, 161 ; *Grossholtz v. Newman,* 88 U. S. [ 21 Wall.] 488 ; *Foster v. Goddard,* 66 U. S. [ 1 Black.] 518 ; *Gurney v. Ford,* 2 Allen, 576 ; 2 Dan. Ch. Pr. 324, and cases cited in note 8 ; *Other v. Somerthwaite,* 5 Eq. Cas. 442, 443. ( 2 ) The court erred in admitting in evidence the pleadings and interlocutory decree in case 13809, *Bobb v. Robb,* and in regarding the recitals and statements in them, and in the decree, as evidence in the cause on which to rest any finding of fact, save that a judgment debt existed, and that the creditor had exhausted his legal remedy. *Snodgrass v. Bank,* 25 Ala. 178 ; *Nichols v. Wadsworth,* 40 Minn. 549 ; *Goodnow v. Smith,* 97 Mass. 68 ; *Donley v. McKiernan,* 62 Ala. 35 ; *Vogt v. Ticknor,* 48 N. H. 245 ; Bump on Fraud. Convey., secs. 574–576, and cases cited ; *Gurney v. Ford,* 2 Allen, 576 ; Wait on Creditors' Bills, secs. 74, 270, and cases cited in notes. ( 3 ) John Bobb cannot attack the deed of Charles Bobb to Rose, trustee of Martha E. Bobb, conveying the "Hayden place." *Bobb v. Bobb,* 99 Mo. 578. ( 4 ) The agreement between Martha E. Bobb and Charles Bobb, that he should retain her funds as Mrs. Bobb's separate estate, was good in equity, and he merely executed his trust by making the conveyance of the Hayden place to Mrs. Bobb's trustee, and her title cannot be affected by the claims of his creditors. *Kinealy v. Macklin,* 89 Mo. 433 ; *Hammons v. Renfrow,* 84 Mo. 341 ; *McGovern v. Knox,* 21 Ohio St. 547. ( 5 ) There was no evidence to sustain the case urged at the trial—that Charles Bobb conveyed property to Mrs. Bobb with intent to hinder, delay and defraud his creditors. *Gilbert v. Glenny,* 75 Iowa, 514 ; *Walsh v. Ketchem,* 12 Mo. App. 580 ; *Shreyer v. Scott,* 134 U. S. 405. ( 6 ) No importance should be attached to the statement of Mrs. Lucy G. Taylor, that Mrs. Bobb admitted to her that when she married Mr. Charles Bobb she had no property. ( 7 ) There is no evidence to sustain the final decree. See cases cited under points 1, 3, 4 and 5.

*Thos. J. Rowe*, *H. A. Clover* and *H. A. Clover Jr.*, for respondents.

(1) The decree is supported by the allegations of the bill and the proofs in the case. (2) The deed of 1831 to Martha E. Bobb was void, so far as these plaintiffs were concerned. The law on this subject is well settled. The burden is on defendants to show at the time of the gift, that the means of the donor, independent of property conveyed, were abundantly ample to satisfy all his creditors. Bump on Fraudulent Conveyances, 284; *Grimes v. Russell*, 45 Mo. 431; *Jones v. Taylor*, 2 Atk. 600; *Lane v. Kingsbury*, 11 Mo. 402. The inquiry is limited to the circumstances of the donor at the time of the conveyance. *King v. Thompson*, 9 Pet. 204; *Posten v. Posten*, 4 Whart. 27. To rebut the presumption of fraud the proof must be clear, full and satisfactory. If there is a reasonable doubt of the adequacy of the grantor's means, then the voluntary conveyance must fall. *Patten v. Casey*, 57 Mo. 118; 19 Md. 22; 8 Cow. 406; 8 Cal. 118; *Payne v. Stanton*, 59 Mo. 158; *Pawley v. Vogel*, 42 Mo. 291; *Potter v. McDowell*, 31 Mo. 62; *McLaren v. Mead*, 42 Mo. 115. (3) The finding of the chancellor in equity causes will be deferred to by this court, unless he has manifestly disregarded the evidence—and this, obviously, more especially in jurisdictions where the evidence is given *viva voce* by the testimony of witnesses testifying in open court under the eye and observation of the chancellor. *Sharp v. McPike*, 62 Mo. 300; *Hodges v. Black*, 76 Mo. 537; *Boyle v. Jones*, 78 Mo. 403; *Snell v. Harrison*, 83 Mo. 651; *Ford v. Phillips*, 83 Mo. 523. (4) Transactions between husband and wife, between whom there exists a natural and strong motive to provide for a dependent at the expense of honest creditors, if such transaction be impeached as fraudulent, may be shown to be fraudulent by less proof, and the party claiming the benefit of such transaction is held to a fuller and

stricter proof of its justice and the fairness of the transaction after it is shown to be *prima facie* fraudulent than would be required if the transaction were between strangers. *Brickley v. Walker*, 32 N. W. Rep. (Wis.) 773, and note; *Jackson v. Beach*, 9 Atl. Rep. (N. J.) 380; *Foster v. Knowles*, 7 Atl. Rep. (N. J.) 295; *Frank v. Humphrey*, 12 N. E. Rep. (Ill.); *Popendick v. Frobenius*, 23 N. E. Rep. (Mich.); *Bank v. Weber*, 33 N. W. Rep. (Iowa) 606; *Hanson v. Manley*, 33 N. W. Rep. (Iowa) 357; *Seminary v. Saenger*, 33 N. W. Rep. (Mich.) 301; *Chapman v. Somerfield*, 14 Pac. Rep. (Kan.) 253; *Witz v. Osburn*, 2 S. E. Rep. (Va.) 33, and note; *Webb v. Ingraham*, 1 S. E. Rep. (W. Va.) 816; *Wedgworth v. Wedgworth*, 4 South. Rep. (Ala.) 149; *Burt v. Timmons*, 2 S. E. Rep. (W. Va.) 780, and note; *Pollack v. Searcy*, 4 South. Rep. 137; *Gordon v. McIlwain*, 82 Ala. 247; 2 South. Rep. 671; *Hubbard v. Allen*, 59 Ala. 283; *Knight v. Capito*, 23 W. Va. 644, 645, and numerous authorities cited by Bump on Fraudulent Conveyances [3 Ed.] 57, 59; *Kaine v. Weigley*, 22 Pa. St. 183, 184, which says: "In any case the urgency and number of the circumstances are proportioned to the original improbability of the offense." (5) Again, when a wife purchases land or other property, the burden is upon her to prove distinctly that she paid for the land or other property with funds not furnished by her husband. Evidence that she purchased amounts to nothing, unless it is accompanied with clear and full proof that she paid for it with funds furnished by some one other than her husband. In the absence of such proof the presumption is that her husband furnished the means of payment. *Seitz v. Mitchell*, 94 U. S. 580; *Stockdale v. Harris*, 23 W. Va. 499; *McMasters v. Edgar*, 22 W. Va. 673; *Rose v. Brown*, 11 W. Va. 122; *Core v. Cunningham*, 27 W. Va. 206; *Herzog v. Weiler*, 24 W. Va. 203; *Sloan v. Torrey*, 78 Mo. 625.

THOMAS, J.—The petition in this case is in the nature of a creditor's bill, and it seeks to set aside and

cancel certain conveyances mentioned therein, and to subject the land described in them, situated in the city of St. Louis, to the payment of a judgment in favor of plaintiffs against Charles Bobb, one of the defendants, for the sum of $82,185.16, rendered June 15, 1878. In substance, the petition avers that the debt for which said judgment was rendered by the circuit court of the city of St. Louis accrued during the years 1843 to 1869, inclusive; that John S. Miller held a deed of trust on the lands described, dated the twenty-third day of September 1865, for $8,000 principal; that defendant, Charles Bobb, bought this deed of trust some time after its execution; that on the sixth day of February, 1879, said Charles Bobb caused the land described in this deed of trust, and which is the land involved in this suit, consisting of two tracts, to be sold by the trustee named in the deed of trust, and at the sale said Charles Bobb had Henry C. Bagot, who is also made a defendant herein, to buy said land and take a deed to himself therefor; that no money was paid for the bid made at this sale, and that said Charles Bobb had the title placed in said Bagot for his own benefit, said Bagot not having any beneficial interest therein, nor having paid anything for it; that Bagot, at the instance and request of said Charles Bobb, conveyed said land to John Letcher, without consideration, but that the latter had not then placed his deed on record. The petition then avers that the said defendant, "Charles Bobb, so caused said real estate to be conveyed, first, to said Bagot, and afterwards to said Letcher, and also caused said conveyance to be withheld from record, with the fraudulent purpose and design of hindering and delaying his said creditors, and to prevent said property from being subjected to the payment of said judgments; that neither said Bagot nor said Letcher has, or ever had, an interest in said property, nor have they, or either of them, ever paid anything therefor, but said property in fact belongs to said defendant, Charles Bobb, who has

caused the title thereof to be placed successively in said Bagot and Letcher, with the fraudulent design aforesaid ; that the defendant, Martha E. Bobb, is the wife of the defendant, Charles Bobb ; that as plaintiffs are informed and believe, and therefore state, the said defendant, Martha E. Bobb, now claims and asserts that she is in truth and in fact the owner of the real estate hereinbefore described, and that she was in truth and in fact the owner of the notes secured by deed of trust under which said real estate was sold, as hereinbefore set forth, and that the said real estate was bought in for her, and that she is now the equitable owner of the same, although said real estate now stands in the name of the said John Letcher : wherefore the plaintiffs make the said Martha E. Bobb a party defendant to this action ; that nothing has ever been collected on said judgment excepting the sum of $6, and that, as to the balance of said judgment, returns of *nulla bona* have been made on the executions issued thereon to the sheriff of the said city of St. Louis ; wherefore the plaintiffs pray the court that said real estate be decreed to be the property of defendant, Charles Bobb, and, as such, to be subject to the lien of said judgments and decree so rendered as aforesaid against said Charles Bobb, and in favor of said John H. Bobb and Lucy G. Taylor, and the said estate of the said Charles L. Bobb, and that said real estate be decreed to be sold as the property of said Charles Bobb, in order that the same may be applied as far as it will go towards the payment of said judgments, and for such other and further relief as to the court may seem meet, and as in equity belongs."

This petition was filed April 4, 1881. Defendants filed a general denial June 8, 1881. On the fifteenth day of October, 1887, defendant, Martha E. Bobb, who alone actively defended the suit in the court below, filed her separate answer to the petition, as follows : "Now comes the defendant, Martha E. Bobb, and by leave of

court files this, her separate answer to plaintiff's petition, and admits that she does ·claim the property described in plaintiff's petition, and says that she is the true and sole owner thereof, and that neither defendants Bagot nor Letcher ever had any beneficial interest in said property, but merely held the legal title for short periods, as trustees of and for the sole use and benefit of this defendant, and this defendant states that she has no knowledge or information sufficient to form a belief as to the truth of the facts stated in said petition."

Upon the issues thus made, the case came on for trial, and was determined. The plaintiff offered documentary evidence, whereupon defendant, Martha E. Bobb, objected to the introduction of any evidence against her, because no allegations sufficient to charge her property were made in the petition. The court overruled the objection, and defendant, Martha E. Bobb, excepted to the ruling; and this presents the first question for decision.

I.   Defendants' counsel contend that on the trial the plaintiffs abandoned the case stated in the petition, and, without warning, sprung a new case of fraud, affecting Mrs. Bobb's title to the property, which was not alluded to in their petition, based on an entirely new theory.   We do not concur in this view of the issues tendered by the petition.   The averment is that Charles Bobb. bought the land and paid for it, and had the title placed in Bagot and Letcher for the purpose of hindering and delaying his creditors, and to prevent the property from being subjected to the payment of the judgment in favor of plaintiffs ; and then adds that plaintiffs are informed and believe, and so state, that Martha E. Bobb claims to be the equitable owner of the property, and to have paid for it, although the title stood in John Letcher ; and it is prayed that she be made a party defendant.   It is conceded in the argument that the allegations of the petition make out a

good case against Bagot and Letcher; but, as there are no allegations that Mrs. Bobb was guilty of any fraud, it was error, it is claimed, to admit evidence affecting her title. This argument proceeds upon the theory that the pleadings admit the title to the property in controversy to be in Mrs. Bobb. This is an error. The petition positively asserts that the legal title is in John Letcher, and it was put there by Charles Bobb to cover up the property from his creditors. Mrs. Bobb, it is alleged, claims she was the owner of the property, in equity, and had paid for it. This claim of hers, which is alleged in the petition, cannot be held to nullify the previous statements of the petition that Charles Bobb was in fact the owner of the property, had paid for it, and had it conveyed to Letcher to defraud his creditors. Take the petition altogether, there is but one conclusion that can fairly be reached, and that is that whatever claim to the property Mrs. Bobb might interpose was subject to the conditions on which Letcher held it. When the trial began, the court did not know, and could not know, from the pleadings, where the legal title to the property was. Plaintiffs alleged it to be in Letcher, while Mrs. Bobb set up that she had it. The evidence showed that Letcher conveyed the property to Mrs. Bobb by deed dated May 1, and acknowledged May 17, 1881, and recorded March 16, 1882. Hence, at the time the petition was filed Letcher did hold the legal title.

It is insisted, however, that when the deed vesting the title in her was recorded several years prior to the trial, and Mrs. Bobb disclosed in her answer, filed in 1887, that she was clothed with the legal title to the property, plaintiffs ought to have amended their petition so as to conform to the facts occurring subsequent to the institution of the action. Plaintiffs could have done this; but we know of no rule of pleading, either in a court of equity or a court of law, requiring them to do it. If the occurrences subsequent to the institution

of the suit were favorable to Mrs. Bobb, it was her duty
to set them up and plead them as a defense to the action.
The plaintiffs stood, and had a right to stand, upon the
facts as they existed at the time they filed their peti-
tion. The case of *Reed v. Bott*, 100 Mo. 62, mainly
relied on by defendants to support their contention, we
do not regard as in point. There it was averred that
John A. Bott bought the property, paid for it, and had
it conveyed to his wife to defraud his creditors; while
the evidence showed that John Bott ( John A. Bott's
father ) bought the property, which was conveyed to
the wife of the latter; and it was held that there was a
fatal variance in the proof from the allegations of the
petition. The court says: "The land was purchased
and paid for by John Bott. If there is any fraud in
the case, it is in the transaction by which the land was
acquired from John Bott, and in the methods by which
payments were made to him. This transaction is not set
up in the petition at all. The petition is so framed as
to exclude the idea that there ever was such a trans-
action." There the plaintiff proved a case not alleged;
here the plaintiff proved, or tried to prove, the identical
facts averred in the petition, viz.: *First.* That Charles
Bobb did pay for the land ; *second*, that Letcher held
the legal title to it; *third*, that Bagot and Letcher
paid nothing for it ; *fourth*, that the title was placed
first in Bagot, and subsequently in Letcher, to
defraud creditors ; and, *fifth*, that Bobb was insolvent.
The two cases are not parallel in any respect.

II. The next point made for a reversal of the
decree in this case is that the court erred in the admis-
sion of evidence; and, in order that this point may be
fairly understood, it becomes necessary to give a *resumè*
of the issues presented, and of the facts as developed
on the trial. It appeared that Miller did hold the deed
of trust for $8,000, mentioned in the petition, dated
September 23, 1865, and that Mrs. Bobb claimed to have
furnished the money to buy it, and that she was in fact

the owner of it ; and, as that was the sole consideration of the deed of the trustee to Bagot in 1879, she was in equity entitled to the property. It was conceded by all parties that Bagot and Letcher never paid anything for the property, and never pretended to own it. It is true, Letcher did hold the property for a time to secure him as surety on an appeal-bond ; but he did not have anything to pay on that bond, and he thereafter set up no claim to it. Bagot and he, then, simply held the title for the party who was the beneficial owner ; the sole issue being whether Charles Bobb or his wife furnished the money to buy the Miller deed of trust. This purchase was made in 1875. On the trial, plaintiffs offered in evidence the whole record, including the pleadings, the referee's report, and the interlocutory and final decrees in the case of John H. Bobb *v.* Charles Bobb *et al.*, number 13809, in the circuit court of the city of St. Louis. The petition in this latter action was filed September 9, 1869, and its object was to compel Charles Bobb, as trustee, to account for certain moneys it was charged he had received for plaintiff and his brother, Charles L. Bobb, and his sister, Lucy G. Taylor, the latter two being made defendants. It is alleged that the trust began in 1843, and had been continued to the time of the commencement of that action. The court thereupon enjoined Charles Bobb from interfering with the trust funds. Charles Bobb filed answer and made vigorous resistance in the case ; but on the fourth day of November, 1871, the court, upon a trial, entered an interlocutory decree in favor of plaintiff, finding the issues for him as presented by his petition, and appointed a referee to take an account and report. The case dragged along until June 15, 1878, when a final decree was entered. This decree is quite lengthy, and sets out in full the findings of the court, which are to the effect that Charles Bobb had been the trustee of plaintiff, his brother and sister, from January 23, 1845, up to the

institution of this suit, and, as such, received into his hands large sums of money belonging to the beneficiaries during the period of his trusteeship, some having been received soon after the creation of the trust in 1845. These sums were found to amount, with interest, at the time of the decree, to $82,185.16. The issues were so framed that the court granted Charles L. Bobb and Lucy G. Taylor affirmative relief, and judgment was rendered against Charles Bobb in favor of plaintiff for $27,538.83; in favor of Charles L. Bobb for $18,382.59; and the court found that there was due from Charles Bobb the sum of $36,263.83 to Lucy G. Taylor, and that she had, since the institution of the suit, assigned her claim to the plaintiff, and the judgment was in his favor for that sum. These three sums make up the total of $82,185.16, as above stated. Now, when this record was offered in evidence, Mrs. Bobb objected to it "as incompetent and irrevelant, and as being of a suit to which she was not a party." The court excluded the report of the referee, but admitted in evidence the petition, the answers and the interlocutory and final decrees, and exceptions were duly saved. There was no evidence introduced showing that any indebtedness of Charles Bobb to John H. and Charles L. Bobb and Lucy G. Taylor existed prior to 1862, except this record. Defendant's counsel concede now that the final decree was admissible in evidence to prove the existence of the debt of Charles Bobb. Indeed, it cannot be controverted, for the authorities are uniform in support of this principle. Wait on Fraud. Con. & Cred. Bills [2 Ed.] sec. 270; Bump. Fraud. Con., pp. 575, 576.

But it is contended with much earnestness that the petition, interlocutory and final decrees, as well as the answers of the defendants in that case, were not admissible as evidence in this case of the existence of Charles Bobb's indebtedness prior to the rendition of the judgment, on the ground that these, as to that issue, are *res inter alios acta.* According to the issues presented,

it was incumbent on plaintiffs to prove the fraud alleged, and in order to do this it was important they should show that Charles Bobb was indebted at the time it is alleged he conceived, as well as at the time he consummated, the fraud. To be entitled to the relief they sought, it was necessary for them to prove two ultimate facts: *First,* that Charles Bobb perpetrated the fraud ; and, *second,* that Martha E. Bobb was affected by the fraud, either because she was not a *bona fide* purchaser of the property, or because she had notice of or participated in it. These two propositions embraced the whole scope of the inquiry. Plaintiffs' counsel contend that, it being conceded to be established law that the judgment is admissible for some purposes, the objection made in the court below that this evidence was incompetent and irrelevant, and as being of a suit to which Mrs. Bobb was not a party, was not broad and specific enough to embrace the objection urged in this court. This is the correct view, unquestionably, so far as the judgment itself is concerned, as we will see hereafter. But the plaintiffs included in their offer to read, and did read, in evidence, over the objection of defendants, the petition, answers of defendants and the interlocutory and final decrees in the case named. The record shows that plaintiffs offered all these at the same time, and the objection went to all of them. It now appears, and it is now conceded, that the final decree was admissible in evidence to show the existence of the indebtedness of Charles Bobb to these plaintiffs at the *time of the entering of the decree.* The petition, answers and interlocutory decree could have been introduced for but one purpose only, and that was to establish the indebtedness at a period prior to the date of the final decree. If the position assumed by appellants be correct,—that these were not admissible for any purpose,—then their objection that they were "incompetent and irrelevant, as being of a suit to which Mrs. Bobb was not a party," was broad, and specific

enough. As the court excluded the referee's report, which was included in the general offer of the other documents, and as the final decree had been previously read in evidence, we may presume that the trial court understood the objection as going to each document offered, and acted accordingly; and in the consideration of the question we will assume that it is before us on the specific objection now presented, *i. e.*, that these documents were not admissible in evidence to establish the indebtedness of Charles Bobb at a period prior to the date of the final decree.

As stated before, this objection proceeds upon the ground that these documents constitute, as to Mrs. Bobb, *res inter alios acta*, and on that ground are incompetent to prove the issue which it is claimed they do prove, and which they must have been offered to prove. While some authorities announce the doctrine contended for by defendants ( *Snodgrass v. Bank*, 25 Ala. 169, and *Donley v. McKiernan*, 62 Ala. 35 ), yet it does not seem very logical to hold that the pleadings and judgment in a cause cannot be read in evidence against a stranger to the record to establish the indebtedness for which the judgment was rendered prior to its rendition, because, as to him, they constitute *res inter alios acta*, and at the same time hold that these are admissible in such case to prove an indebtedness at the time the judgment was rendered. It seems, on principle, that, if a stranger to the record is not bound by the judgment in one case, he ought not to be in the other. The indebtedness of Charles Bobb at the time of the inception of the alleged fraudulent transactions is an issue in the cause, and both parties concede its importance. It devolved on plaintiff to prove it. How shall he prove it? There is only one way for him to do it, and that is to introduce evidence of *res inter alios acta*.

The plaintiffs charge the fraud was conceived by Bobb in 1875, and consummated in 1879. The documents

under review, in our opinion, were, as a part of the res gestæ, clearly admissible to prove the issue of fraud made in the case. The fact of the commencement of the suit, the fact of the entering of the interlocutory decree, and the fact of the pendency of the controversy at the time of the inception and progress of the alleged fraudulent transactions were all important facts, and all clearly provable by this record. Not only that, but it was important for plaintiffs to prove the nature and magnitude of the claim then made against Bobb, and its judicial *status* as calculated to influence and characterize his conduct. In order to understand the true inwardness of the purchase of the Miller deed of trust in October, 1875, we must view the transaction from the standpoint of Bobb and his wife. At that time we find John H. Bobb had a suit pending against Charles Bobb, in which it was alleged he was indebted to certain beneficiaries in the sum of $400,000. A decree had been entered finding the issues against Charles Bobb, and a referee then had the matter under investigation. It seems clear, therefore, that these documents were admissible in evidence for some purposes, at least; and hence the court committed no error in overruling the objection made, that they were "incompetent and irrelevant, as being of a suit" to which Mrs. Bobb was not a party. We feel satisfied that both upon principle and authority these documents, in connection with the final decree, were competent to prove: *First*. That Charles Bobb was indebted, not only at the time of the rendition of the final decree, but also at the time of the institution of the suit. The court must take notice that the judgment was for the claim set out and alleged in the petition, and that it must have been in existence at the commencement of the action. *Second*. That the action was begun September 9, 1869. *Third*. That the interlocutory decree was entered November 4, 1871, and that the suit was pending from 1869 to June 15, 1878. *Fourth*. That certain facts were alleged and a certain

demand made against Charles Bobb, as well as the amount claimed. Thus far we have no doubt.

But plaintiffs go further in their contention, and claim that these documents not only prove the pendency of the suit, and that certain facts were alleged to exist, but also that the facts alleged did exist. These documents were offered as evidence generally. If defendants had made the specific objection that they were not competent to prove the facts alleged in them, it seems that by the generally recognized rule they ought not to have been admitted for that purpose. *Vogt v. Ticknor*, 48 N. H. 242; *Snodgrass v. Bank*, 25 Ala. 169; *Nichols v. Wadsworth*, 40 Minn. 549; *Donley v. McKiernan*, 62 Ala. 35; Bump. Fraud. Con. 574, 575, and cases cited; Wait on Fraud. Con. & Creditors' Bills, secs. 74, 270. In some jurisdictions, however, it has been held that the whole record in a case may be looked to, to see when the indebtedness involved, and for which judgment was rendered, first accrued. *Hinde's Lessee v. Longworth*, 11 Wheat. 209; *Goodnow v. Smith*, 97 Mass. 69. But the objection made to the introduction of this evidence being general, and the evidence being admissible for some purposes, the question is, can parties be heard now to urge the specific objection that it was not admissible to prove the existence of Bobb's indebtedness prior to 1869? We hold they cannot. It is evident this objection in this case is a technical one. It took the parties nine years to litigate this indebtedness, and it was found, after a most stubborn and prolonged resistance on the part of Charles Bobb, that it had accrued from 1843 to 1869; and it can scarcely be conceived that any of the parties had any desire to go over the same ground again. It cannot be maintained that the judgment against Bobb was procured by his collusion. As to him, it is certain the rendition of that judgment was *in invitum*. Here the defendants interposed the objection that this evidence was "incompetent and irrelevant, and as being of a suit to which Mrs. Bobb was not a

party." The evidence is found to be competent and relevant for some purposes, notwithstanding it constituted *res inter alios acta;* and to admit an inquiry in this court whether the evidence might not have been admissible for other purposes would be sanctioning a course of practice calculated to mislead. *Hinde's Lessee v. Longworth, supra; Dunkman v. Railroad,* 95 Mo. 232; *Block v. Estes,* 92 Mo. 318, and cases cited; *Russell v. Glasser,* 93 Mo. 353; *Backenstoe v. Railroad,* 23 Mo. App. 148; *Dunham v. Simmons,* 3 Hill (N. Y.) 610; *Whiteside v. Jackson,* 1 Wend. 418; *Norman v. Wells,* 17 Wend. 142; *Griveaud v. Railroad,* 33 Mo. App. 465. But, as will appear later on, the view we take of the alleged fraudulent transaction having its inception in 1875, in the purchase of the Miller deed of trust, makes it unnecessary to look to these documents to prove any fact prior to 1869.

III. Defendants contend, in the third place, that as John H. Bobb, the present plaintiff, wrote the deed by which Charles Bobb conveyed what is known as the "Hayden place" to Martha E. Bobb's trustee in 1861, he cannot attack it now. He does not seek directly to attack it. The fraudulent transaction attacked here originated in October, 1875, and the consideration of the deed of 1861 comes in issue only collaterally and incidentally. It is true, John H. Bobb did write the deed, and he now claims that it was without valuable consideration. In fact, the expressed consideration of the deed is $5; and hence we can see no recital in the deed that would estop plaintiffs from asserting that there was no other consideration than the $5, or even that the $5 was not paid. Mrs. Bobb claims she derived the money which she paid for the Miller deed of trust from the land conveyed by the deed of 1861; and plaintiffs had a right to show, if they could, that it was a voluntary conveyance on the part of Bobb, made in fraud of creditors, at a time when he was in debt heavily. The case of *Bobb v. Bobb,* 99 Mo. 578, cited by

defendants in support of this contention now under discussion, is not similar to this in any of its features.

IV. The court committed no error in permitting plaintiffs to introduce evidence to overthrow the evidence given by Mrs. Bobb. Plaintiffs did not make Mrs. Bobb their witness by introducing in evidence her deposition taken in another proceeding. The deposition was admissible against her as an admission; and certainly there is no rule of law that would preclude plaintiffs from introducing other admissions of hers contradicting those contained in the deposition. Besides that, while the statements which Mrs. Taylor testifies Mrs. Bobb made to her tend to contradict what she said in the deposition read by plaintiffs, yet they were admissible as primary evidence against her as a party to the suit, and for that reason there was no error in admitting them.

V. This brings us to a consideration of the issues of fact presented by this record. The trial court in substance found that the indebtedness of Charles Bobb for which the judgment of June 15, 1878, was rendered against him began to accrue in 1845, and from time to time continually increased, until at the time of the rendition of said judgment it amounted to the sums adjudged against him ; that Charles Bobb bought and paid for the Miller deed of trust, amounting to $8,000 ; that said Charles Bobb caused the land described in that deed of trust, which is the same involved in this suit, to be sold by the trustee, at which sale he bought the property through defendant, Henry C. Bagot, acting as his agent, for the sum of $4,000, which sum was not paid, but was credited on the note secured by the deed of trust, in pursuance of which sale the trustee, at the instance and by the direction of Charles Bobb, executed a deed to said property to said Bagot, dated February 6, 1879 ; that Charles Bobb caused said Bagot to convey by deed dated July 1, 1879, the said

property to defendant, John Letcher, without consideration, and that Letcher took the property in trust for said Charles Bobb; that the title to this property was put in Bagot and Letcher by said Charles to defraud his creditors, and to prevent said property from being subjected to the payment of said judgment; that after the institution of this suit said Charles Bobb caused said Letcher to convey the same property to his wife, Martha E. Bobb, without consideration; and that this deed was also made to defraud the creditors of Charles Bobb, and was made to hinder and delay plaintiffs in the collection of their judgment, and that the property in fact belonged to Charles Bobb. Upon this finding the court ordered a sale of the property to pay the judgment.

Is this finding supported by the evidence, is the question presented for decision. The record is quite voluminous, and many collateral and incidental questions have been discussed by counsel; but the question may be simplified by stating the ultimate fact to be found which controlled the ruling of the trial court, and which must control us. There is no dispute that the Miller deed of trust amounted to $8,000, and that it was purchased in October, 1875, either by Charles Bobb, or his wife, and that this deed of trust constitutes the sole consideration of the purchase of the property involved in this controversy. It was assumed in the argument by both parties, and we think the assumption warranted by the record, that Charles Bobb's financial condition, and the circumstances that environed him, in 1875, were such that if he furnished the money to purchase the said deed of trust the judgment of the lower court must be upheld. Hence the simple question is presented for determination, did Charles Bobb furnish the purchase money of the said deed of trust, or did his wife furnish it? If he furnished it, the decree in the case must be affirmed; if she furnished it, it will have to be reversed.

The counsel for Mrs. Bobb present one theory growing out of the evidence, and plaintiffs' counsel present another. In support of the former theory, it is argued that the evidence shows that Mrs. Bobb, when she married Charles Bobb, in 1856, owned in her own right between $2,500 and $2,800, which she delivered to her husband to be invested by him for her; that in 1857 he loaned $2,551 of this money of his wife on what is known in the history of the case as the "Hayden property;" that in 1859 the money was not paid, and the property was sold under the deed of trust taken to secure the loan, and was purchased by Charles Bobb in his own name; that he held this property for his wife until November 4, 1861, when he conveyed it to a trustee for the sole and separate use of his wife, in consideration of the money he had loaned for her; that on May 17, 1867, this property, the "Hayden place," was sold for $13,000, part cash and part on credit; that Charles Bobb received the most of this money into his hands to invest, and which he did invest, for her, to great advantage, so that in 1875 she had a handsome income arising from the rents of the property purchased with it, and interest on loans made out of it; and that she used this income to pay for the Miller deed of trust. Some of the facts on which this theory is based are undisputed. Charles Bobb did convey the Hayden place to Mrs. Bobb's trustee on November 4, 1861. The Hayden place was sold May 17, 1867, for $13,000—one-third cash, balance in one and two years; the deferred payments bearing six-per-cent. interest per annum. The alleged fact that Mrs. Bobb had the money she claimed at the time of her marriage with Charles Bobb, in 1856, and that Bobb received it to invest for her, is disputed, and rests solely on Mrs. Bobb's own evidence. If this theory of Mrs. Bobb's counsel is supported by the evidence, she has a good case, and the ruling ought to be for her.

Against this theory plaintiffs present an opposing one. It is this: That Mrs. Bobb had no money when she married Charles Bobb, in 1856 ; that the deed of November 4, 1861, to Mrs. Bobb's trustee was void as in fraud of the demand of plaintiffs which they claim existed at that time, and was made to defraud plaintiffs ; that there was a deed of trust on the "Hayden property" prior to the loan of $2,551 in 1857, this prior deed of trust amounting to the sum of $4,372.74 ; that this prior deed of trust was bought and paid for by Charles Bobb, and that he never intended by his deed of November 4, 1861, or otherwise, to give this deed of trust to his wife, so that, when the "Hayden place" was sold in 1867 for $13,000, he was entitled to receive payment, and did receive payment, out of the proceeds; that, at most, Mrs. Bobb was not entitled to receive, and did not receive, more than her proportionate share, to be ascertained by taking the principal and interest of said prior deed of trust out of the $13,000 and giving her the balance, even if she was entitled to receive anything; that after the institution of the original suit, in 1869, of John H. Bobb against Charles Bobb and others, Charles Bobb commenced a systematic course to put his property out of his hands to avoid any judgment that might be rendered against him thereon ; and that the pretense that his wife furnished the $8,000 in October, 1875, to purchase the Miller deed of trust was a part of this scheme, and that he used his wife's name to cover his tracks in the transaction.

A part of the facts on which this theory is based is not disputed. There was a prior deed of trust on the "Hayden property" for the sum of $4,372.74, dated October 25, 1855. This prior deed of trust was entered "satisfied" on the margin of the record by Charles Bobb, assignee, on the fifteenth day of May, 1867, the day this property was sold for $13,000. The loan of $2,551 on the " Hayden property " in 1857 was made in the name of Charles Bobb, when the " Hayden place "

was sold for $13,000, $4,333.33 of the purchase money was paid in cash, and the balance, $8,666.66, was divided into two equal installments of $4,333.33, for which notes were given, secured by deed of trust on the property,—one payable in one, and the other in two years after May 17, 1867, each bearing six-per-cent. interest per annum. On the seventeenth day of May, 1870, Charles Bobb, as assignee of these two notes, entered satisfaction of the deed of trust. Prior to 1870, Charles Bobb had large property, from which he derived a handsome income. To rebut defendant's theory, they called Lucy G. Taylor, who testified that Mrs. Bobb told her she had nothing when she married Charles Bobb, in 1856. Mrs. Bobb, in her testimony, claimed that she obtained the money that went into the loan of $2,551, in 1857, on the "Hayden place" from her former husband's and from her father's estates. She admitted her mother was still living at the time of the trial; and it is contended by plaintiffs that the fact that she did not call as witness her mother, who must have known what her father left her, and her husband, who acted as her agent in the loan of this money from 1857 to 1875, tends strongly to prove that her story about her means was fabricated.

These are the two opposing theories of this case. We do not deem it necessary, nor do we think any good purpose would be subserved, to review at length the arguments presented in their support by the attorneys for the respective parties. We will briefly refer to them, however. We will say right here that the finding of the lower court being simply that Charles Bobb did, and his wife did not, furnish the purchase money of the Miller deed of trust, we do not know what view that court took of the issue made as to the means Mrs. Bobb had in 1856, and the *bona fides* of the deed of November 4, 1861, of Charles Bobb to his wife. Suffice it to say that it is fairly a debatable question

whether Mrs. Bobb did have any money when she married Charles Bobb or not; and if the lower court did, in fact, find that she did not have any, we do not feel that under the evidence it would be our province to interfere with the finding. As to the *bona fides* of the deed of November, 1861, we will say that we think the evidence shows that at that time Charles Bobb was in debt to these plaintiffs in a sum in excess of the value of his visible property. But whether that deed was made to secure to Mrs. Bobb her separate money which she placed in her husband's hands for investment, or whether it was a gift by way of settlement on her, we think the weight of the evidence is that Charles Bobb did not intend by that deed to defraud any creditor; in other words, that was a *bona fide* transaction, no matter in what light it is viewed. If it was a voluntary conveyance made by Charles Bobb when embarrassed by debts, and it was not a reasonable provision for his wife, having respect to what he then owned and owed, it might be held fraudulent as to the then existing creditors, whether actual fraud was intended or not. On this issue, again, we do not know what the finding of the lower court was, and we will leave it without further discussion.

This clears the deck, then, of all questions arising prior to May 15, 1867. That day $13,000 was realized by the sale of the "Hayden place." Here, again, we have two distinct theories as to what became of that money. Defendants contend that the whole of it was invested in loans and real estate for Mrs. Bobb; while, on the other hand, it is insisted by plaintiffs, *first*, that none of it ought to have been, or was, invested for her; and, *second*, that, at best, she was only entitled to a share of it, in the proportion of $2,551 to $4,372.74. This last contention alone we will discuss. There is no evidence, whatever, as to when Charles Bobb became the assignee of the deed of trust on the "Hayden property" for $4,372.74, dated in 1855. One single

fact alone appears in the record in regard to it, and that is, on May 15, 1867, the day the property was sold, Charles Bobb, as assignee of this prior deed of trust, entered satisfaction of it; $8,666 was not paid, but notes given running one and two years, with interest at six-per-cent. per annum. May 17, 1870, Charles Bobb, as assignee of these deferred payments, enters satisfaction on the deed of trust given to secure them. We, therefore, think it probable that when the "Hayden place" was sold, in 1867, Charles Bobb took the notes given for the deferred payments to reimburse him for his outlay for the deed of trust of 1855, and that in good faith he intended his wife should have the remainder. In 1867, there is no evidence that Charles Bobb felt he was embarrassed, and there seems to have been no motive for him at that time to cover up his property. This would place to Mrs. Bobb's credit, May 15, 1867, the sum of $4,333.33. We hear nothing of this sum, however, for three or four years, except some indefinite statements of Mrs. Bobb that her husband invested it for her, but she is utterly unable to give a single instance of a loan made for her. We will not discuss the question whether this sum, no matter how advantageously it may have been invested, could have produced an income sufficient to enable Mrs. Bobb, in 1875, to invest $8,000 in the Miller deed of trust. We will dispose of this question by conceding that the whole $13,000 belonged to her, and inquiring whether the investment of that sum enabled her to buy the Miller deed of trust.

We will remark, here, that Mrs. Bobb does not claim that she invested any of the principal in the Miller deed of trust, but that she paid for it solely out of the interest on loans and the rents of her property, and she also concedes that all she possessed in 1875 was derived from the proceeds of the sale of the "Hayden property." She had $4,333.33 cash, then, on this assumption, May 15, 1867. The other $8,666.66

drew six-per-cent. interest. Suppose that the $4,333.33 was invested so that it yielded six per cent. net,—and this is probably more than was in fact realized out of it after paying taxes,—then she would on May 15, 1870, have had of this sum $5,113.33, principal and interest. On the remainder of the $13,000 she would have had, May 15, 1870, principal and interest, the sum of $10,256.99. The evidence shows that in 1871 M. A. Wolff collected rents for her from real estate she owned then; that in 1872 she bought one piece of property for $10,000, and several other properties prior to 1875, but how much she paid for them is not shown. In 1875, however, before the purchase of the Miller deed of trust, she bought a piece of property from Charles Bobb for $8,000. It is very clear from the evidence that there had been invested in real estate in her name prior to October, 1875, more than twice as much money as could have been reasonably realized out of the $13,000; and we are satisfied that she could not have had any money on hand or loaned at that time derived from her own means. It is claimed that the evidence does not show that she paid her husband the $8,000 for the land she got of him. In the absence of proof, we must presume that what he conveyed to her at that period was to pay her for the money he had of hers, for she says he had all of it as her agent.

We feel satisfied, also, that Charles Bobb transacted his business, in 1875, in the name of his wife to cover up his property from his creditors, and from the following considerations: Though Mrs. Bobb claims her husband got over $2,500 in 1856, and $4,333.33 in 1867, and over $10,000 in 1870, of her money, yet no trace of it in bank or notes can be found till August 3, 1875, and then in three months and a half, from August 3 to November 30, 1875, she has in bank of her own money, outside of moneys arising from discounts, the sum of $20,318.50, and from August 3, 1875, to August 2, 1877,—two years,—she had in bank of her own money

Jamison v. Bagot.

$46,000 and over. This is her own showing of her bank account kept in her name, but the circumstances show that Charles Bobb furnished the money. She says she did not have enough money on hand to pay for the Miller deed of trust, and she had to discount a note of $4,000 to raise the necessary amount. The bank account of hers introduced in evidence shows she did discount a note of $4,000, October 18, 1875, and she says she paid for the Miller deed of trust with $2,000 in cash not in bank, and by two checks for $3,000 each, one dated, October 22, and the other, November 4, 1875. On October 18, when the note was discounted, she had in bank nearly $5,000; on October 19, there was deposited to her credit $3,000; on October 21, she is credited with another deposit of $1,300; and on the twenty-second day of October, the day she drew the first check of $3,000, and four days after the note of $4,000 was discounted, there was another deposit of $1,720. So that on the day she drew the first check to pay for the Miller deed of trust she had in bank $11,020.20, besides the sum realized from the discounted note, and with that she had in bank $14,989.80. Add the $2,000 cash which she says she carried with her to the bank, and we have the sum of $16,989.80 which she then had. On October 27, $300, and on November 4, $5,000, are deposited to her credit. So that the day she drew the last check to pay for the Miller deed of trust she had in bank, not deducting the first check of $3,000, the sum of $22,189.90; or, deducting the discount, she had $18,220. She says all the money she had to pay for the Miller deed of trust was derived from interest on loans and the rents of her property; and the inference is that this sum of $18,220 was derived from the same source.

This is her story, and it is preposterous in the extreme. It was impossible for her income to have produced the sums she claimed it did. The bank account she produced was Charles Bobb's account, in fact. She says the $4,000 note was discounted to enable

her to buy the Miller deed of trust, whereas her bank account shows she had on hand more than twice as much as was paid for the Miller deed of trust.   During the period from October 18 to November 20, her bank account shows she drew checks against it as follows : October 21, $6,000; October 22, $3,600; October 27, $3,000 ; October 26, $2,000; November 20, $3,000.   Supposing the two checks of $3,000 with which she is charged as of October 27 and November 20 are the two that paid for the Miller deed of trust, we have left checks aggregating $11,600 drawn against her account during that period, no explanation of which whatever is given.   The cogent facts seem to point unerringly to the conclusion that Charles Bobb was doing business in his wife's name, and the items of credit in her bank account were furnished by him, and not by her.   We have shown that it is not probable that she could have had the money to buy the Miller deed of trust ; but let us see if Charles Bobb could have had it.   The evidence shows that from 1862 to 1870 he was worth $100,000 outside of the trust property, on account of which he became indebted to plaintiffs ; that he derived a good income from his own property, and $5,000 or $6,000 a year from the trust property, from 1862 to 1870.   His counsel shows that he owned, in 1869, $47,000 worth of real estate.   He met with no losses at any time.   He never paid a cent on the debt he owed plaintiffs, which amounted in 1878 to the sum of $82,000 and over.   Hence it is easy to see how he could have $20,000 deposited to his credit in the bank in three and a half months.   We can very readily discover a motive for him to do business under cover of his wife's name in 1875.   He was sued in 1869 for $400,000; he was removed as trustee from the management of the trust property ; the court entered an interlocutory decree against him November, 1871, and from that time till 1878 a referee had the accounting under consideration. We find, from 1869 to 1877, his property grows small

by degrees and beautifully less, while that of his wife assumes magnificent proportions.   His hand, like a magic wand, touches her $2,551, and behold a fortune grows out of it in a short time.   The same hand touches his $100,000 in his own right, and the large sum he held as trustee, and lo! and behold! it crumbles away, and finally disappears entirely.   Hence we conclude that the great weight of the evidence is in favor of the finding of the lower court that Mrs. Bobb did not, but that Charles Bobb did, pay for the Miller deed of trust, and that this was done to prevent plaintiffs from reaching the property.

Besides that, the trial judge heard Mrs. Bobb testify, saw her manner upon the witness stand; and as she did not call her husband to corroborate her, but submitted her case on her own testimony, he is better qualified to judge of her credibility than this court. And, again, we ought to defer somewhat to the finding of the court below, even if the fact was in some degree in doubt as to how it ought to be decided.   Finding no error in the record, the judgment is affirmed.   All of this division concur.